**Kenned RODRIGUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–96–00074–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Jan. 29, 1998.

Decided July 10, 1998.

**28.** *Id.*

**29.** *LaCoke,* 585 S.W.2d at 680.

Renato Santos, Houston, for appellant.

Calvin A. Hartmann, Asst. Dist. Atty., Houston, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Kenned Rodriguez appeals from a ruling certifying him as an adult and from a conviction for aggravated robbery. A jury found Rodriguez guilty and assessed punishment at forty years' imprisonment and a fine of $5,000.

Rodriguez contends that the trial court did not have jurisdiction because the transfer order from the juvenile court was invalid. Rodriguez also contends that he received ineffective assistance of counsel in both the guilt/innocence and punishment phases of trial because trial counsel failed to object to inadmissible evidence and improper jury argument.

Albino Vargas was the State's key witness at trial. Vargas testified that on June 15, 1994, at around 4:00 a.m., he was returning to his apartment from work. At that time, he saw a bluish-gray four-door car pass by him. He noticed that there were three people in the car.

As Vargas walked through the apartment complex parking lot, someone in the car said, "Stop." Vargas noticed that the car had stopped and saw the back seat passenger get out of the car and walk toward him. Vargas later identified to a police officer the person walking toward him as Rodriguez. He stated that Rodriguez was walking fast and sort of sideways as if to conceal a firearm.

When Rodriguez was about five-to-six feet away, he pulled a sawed-off shotgun from his left side, raised it toward Vargas, and asked for Vargas' wallet. Vargas testified that the remaining passenger in the car was also pointing a gun at him. Vargas gave Rodriguez seven dollars from his front pocket, and when Rodriguez asked Vargas if he had any jewelry or gold chains, Vargas told him, "No." Rodriguez ran back to the car, jumped into the back seat, and the car drove off.

Vargas went to a nearby Stop 'N Go and called the police. He described the robbers' vehicle to the dispatcher and gave the license plate number.

About fifteen minutes after a police broadcast describing the vehicle, police officers saw the car and began to follow it. The vehicle was stopped, and Rodriguez and the other occupants were detained. Officers searched the vehicle and discovered a sawed-off shotgun and a blue steel .25 caliber pistol.

The officers then brought Rodriguez and his companions to Vargas' apartment, and Vargas identified Rodriguez as the one who had pointed the shotgun at him and who had robbed him. Vargas also identified the passenger who had pointed a pistol at him and indicated that the third suspect appeared to be wearing clothes similar to the driver's clothing.

Without being interrogated by police, Rodriguez told the police that he owned the shotgun found in the vehicle, and he later admitted to police that he was the one who

pointed the shotgun and robbed Vargas. Rodriguez was sixteen at the time of the robbery.

## I. JURISDICTION

In his first point of error, Rodriguez complains that the trial court did not have jurisdiction because the transfer order from the juvenile court was invalid. Rodriguez argues that the order was invalid because the trial court failed to obtain a diagnostic study as required by the Family Code.[1]

■ Under Section 54.02 of the Family Code, the juvenile court may under certain circumstances waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings.[2] However, prior to the transfer hearing, the juvenile court must order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense.[3]

The provisions of Section 54.02 may be waived pursuant to Section 51.09 of the Family Code[4] if

(1) the waiver is made by the child and the attorney for the child;

(2) the child and the attorney waiving the right are informed of and understand the right and the possible consequences of waiving it;

(3) the waiver is voluntary; and

(4) the waiver is made in writing or in court proceedings that are recorded.

The State filed a petition and motion for the court to waive jurisdiction on January 30, 1996. On February 13, the juvenile court entered an order for a diagnostic study, social evaluation, and full investigation of Rod-

riguez. The court also ordered that Rodriguez be examined by the Mental Health and Mental Retardation Authority of Harris County, Children's Outpatient Services. On the same day, Rodriguez' trial counsel informed the court that any testing would be waived.

Compliance with Section 54.02(d) is mandatory.[5] In *R.E.M.*, the San Antonio court stated that, in the absence of an effective waiver by the child, the child can be subjected to treatment as an adult only if there has been compliance with the mandatory provisions of Section 54.02.[6]

Rodriguez argues that there is no evidence in the record that he waived his right to strict compliance with Section 54.02. He also argues that there is no evidence that he was informed of the possible consequences of waiving such right. Therefore, Rodriguez contends, the order transferring him to criminal district court was invalid and the criminal court was without jurisdiction to hear the case. The State argues that Rodriguez waived any error because he failed to appeal the transfer order to the court of appeals.

■ To complain of an error in the certification process, a person must appeal the transfer order itself to the court of appeals.[7] An appellant may raise only a jurisdictional error in the transfer process for the first time on appeal from a conviction after the transfer.[8] Defects in the transfer process that are nonjurisdictional in nature must have been raised in an appeal of the transfer order, and are waived if raised for the first time on appeal from a conviction.[9]

■ The question, then, is whether Rodriguez' complaint that there was no effective waiver of the requirements of Section

---

1. TEX. FAM.CODE ANN. § 54.02(d) (Vernon 1996).

2. TEX. FAM CODE ANN. § 54.02(a) (Vernon 1996).

3. TEX. FAM CODE ANN. § 54.02(d) (Vernon 1996).

4. TEX. FAM.CODE ANN § 51.09(a) (Vernon 1996), *amended by* Act of June 2, 1997, 75th Leg., R.S., ch. 1086, § 4, 1997 Tex. Gen. Laws 4181 (current version at TEX FAM.CODE ANN. § 51.09 (Vernon Supp.1998)).

5. *R.E.M. v. State*, 532 S.W.2d 645, 648 (Tex.Civ. App.—San Antonio 1975, no writ).

6. *Id.*

7. *Adams v. State*, 827 S.W.2d 31, 33 (Tex.App.— Dallas 1992, no pet.).

8. *Id.*

9. *Hidalgo v. State*, 945 S.W.2d 313, 317 (Tex. App.—San Antonio 1997, pet. granted).

54.02(d) is a jurisdictional or nonjurisdictional complaint. Rodriguez complains that the juvenile court's order was invalid because the court failed to obtain a diagnostic study. The present case is similar to *Adams v. State*[10] in that Rodriguez does not contend that the juvenile court did not have 1) jurisdiction over his person, 2) jurisdiction over the subject matter, 3) jurisdiction to enter the particular judgment, or 4) capacity to act as a court.[11] In *Adams,* the appellant complained that the trial court erred by not considering and ruling on the suggestion of Adams' mental retardation in a certification hearing. The Dallas court held that Adams' complaint did not involve one of the above specific issues and, therefore, was not jurisdictional error.[12]

Rodriguez' complaint does not involve jurisdictional error in the juvenile court. The complaint should have been brought by appeal from the certification order. Therefore, Rodriguez' first point of error that the transfer order from the juvenile court was invalid because the trial court failed to obtain a diagnostic study is waived.

This point of error is overruled.

## II. WAIVED ERROR

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion.[13] Rodriguez complains of the trial court's admission of evidence that Rodriguez contends was hearsay, evidence of identification obtained from his alleged unlawful arrest, inadmissible evidence of other crimes, wrongs, or acts, and evidence of an unadjudicated felony committed when he was a juvenile. Rodriguez also complains that the trial court allowed the prosecutor to make an improper jury argument.

Rodriguez' trial counsel did not object to the admission of this evidence or to the prosecutor's jury argument. The admission of hearsay must be preserved with a timely and specific objection to the evidence.[14] Failure to object to out-of-court identification procedures waives error.[15] In order to preserve jury argument error for review, the defendant must (1) make an objection; (2) request an instruction to disregard; and (3) make a motion for a mistrial.[16] A defendant's failure to pursue an adverse ruling to his objection to a jury argument forfeits his right to complain about the argument on appeal.[17] Therefore, these points of error are waived because of trial counsel's failure to object.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Rodriguez complains that he received ineffective assistance of counsel at the guilt/innocence and punishment phases of his trial. Rodriguez contends that his trial counsel was ineffective because he failed to object to the errors complained of above. Specifically, Rodriguez complains that his trial counsel was ineffective for failing (1) to object to Officer Wilson's hearsay testimony that the complainant identified Rodriguez as the perpetrator; (2) to refrain from cross-examining the complainant about the facts surrounding his out-of-court identification of Rodriguez; (3) to object to the out-of-court identification testimony of the complainant and Officer Wilson, as this evidence was the result of Rodriguez' unlawful arrest; (4) to object to Rodriguez's oral statements to Officer Wilson and Officer McDonald, as these statements were the result of Rodriguez' unlawful arrest;(5) to object to Officer Wilson's hearsay testimony that the vehicle was stolen hours before the robbery; (6) to request an instruction to disregard Officer Wilson's

10. 827 S.W.2d 31.

11. *Id.* at 33–34.

12. *Id.*

13. Tex.R.App. P. 33.1(a)(1).

14. *Moore v. State,* 935 S.W.2d 124, 130–31 (Tex. Crim.App.1996).

15. *Perry v. State,* 703 S.W.2d 668, 671 (Tex.Crim. App.1986).

16. *Cook v. State,* 858 S.W.2d 467, 473 (Tex.Crim. App.1993); *Coe v. State,* 683 S.W.2d 431, 436 (Tex.Crim.App.1984).

17. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex. Crim.App.1996).

hearsay testimony that the shotgun used in the robbery was stolen; (7) to object to the prosecutor's improper jury argument asking them to heed to the expectations of the community; (8) to object to Officer Wiggins' testimony concerning appellant's involvement in a burglary of a motor vehicle that occurred when Rodriguez was a juvenile; (9) to object to Officer Odums' hearsay testimony regarding a car-jacking and his discussions with the complainant; and (10) to object to the State's evidence of other wrongs by Rodriguez and for calling a co-defendant as a witness.

In determining whether counsel was ineffective, the reviewing court must look at the trial as a whole and not at isolated incidents.[18] Whether a defendant has received adequate assistance is judged by the totality of the representation, rather than isolated acts or omissions of trial counsel.[19] The standard for testing claims of ineffective assistance of counsel was announced in *Strickland v. Washington*.[20] Under *Strickland*, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on having produced a just result.[21] The appellant must prove that his counsel's representation was deficient and that the deficient performance was so serious that it prejudiced his defense.[22] The review of counsel's representation is highly deferential and indulges a strong presumption that counsel's conduct falls within a wide range of reasonable representation. The right to effective counsel is not a right to error-free counsel.[23]

Counsel's failure to object to admissible testimony does not constitute ineffective assistance.[24] Also, if counsel fails to object to inadmissible testimony as a matter of strategy, his failing to object would not be ineffective assistance.[25] The State contends that the testimony complained of in Rodriguez' points of error was not inadmissible, and therefore, trial counsel was not ineffective in failing to object to the admission of the evidence.

## A. Unlawful Arrest

Rodriguez complains of trial counsel failure to object to the admission of certain evidence because such evidence was obtained from Rodriguez' allegedly unlawful arrest. The evidence complained of is 1) Officer Wilson's testimony about Vargas' out-of-court identification; 2) Officer Wilson's testimony of Rodriguez' out-of-court oral statements; and 3) Officer McDonald's testimony of Rodriguez' out-of-court oral statements.

After Vargas called 9–1–1, identified himself, and gave a description and license plate number of the vehicle involved, a dispatcher broadcasted the information. Between ten and fifteen minutes later, officers reported that they had located a car fitting the description. Officers in two cars pulled behind and beside the car in which Rodriguez was a passenger. Officer Wilson testified that the officers drew their weapons and pointed them at the car because they believed the three suspects were armed. Rodriguez and his companions were instructed to put their hands on the dashboard of the car and, one by one, they were told to exit the car. The suspects were then immediately handcuffed, patted down for weapons, and placed in the back seat of the patrol car. Officer Wilson testified that, because only a short time had passed since the alleged robbery, the suspects were placed in the patrol car so that they could be taken for identification by the victim. The car was then searched, and weapons were found. After discovering the weapons, officers ran a check on the vehicle's

**18.** *Moore v. State*, 694 S.W.2d 528, 531 (Tex. Crim.App.1985).

**19.** *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim.App.1986).

**20.** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**21.** *Id.* at 686, 104 S.Ct. 2052.

**22.** *Id.*

**23.** *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim.App.1986).

**24.** *See Blevins v. State*, 884 S.W.2d 219, 229 (Tex.App.—Beaumont 1994, no pet.).

**25.** *See Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex.Crim.App.1994).

license plate and learned that the car had recently been stolen. The suspects were then taken to the apartment complex, where Vargas identified Rodriguez as the person who pointed the shotgun and robbed him. Officer Wilson testified at trial that Vargas positively identified Rodriguez as the man who robbed him.

Officer Wilson also testified that, during the drive to Vargas' apartment, Rodriguez volunteered that he owned the shotgun found in the car and that the car was stolen. Officer Mike McDonald, testified that he went to the juvenile division on the day of Rodriguez' arrest to talk with Rodriguez about his involvement and the allegations made against him. While there, Rodriguez told Officer McDonald that he was the one who had the shotgun and the one who pointed the weapon at Vargas. Officer McDonald testified that the statement was made voluntarily by Rodriguez after being read his rights but before he was asked any questions.

Rodriguez argues that the actions of the arresting officers constituted an unlawful arrest because he was arrested, and not merely detained, before he was taken to Vargas' apartment complex for identification and because there was no probable cause to arrest. The State argues that the out-of-court identification and statements were properly admitted because, as Officer Wilson testified, Rodriguez was not under arrest before he was identified by Vargas. Rodriguez was, according to the State, being lawfully detained as part of an investigation because the officers had the necessary reasonable suspicion[26] gained from the broadcast description of the vehicle given by Vargas.

In reviewing this point of error, we must first determine whether Rodriguez was merely detained for investigatory purposes or actually placed under arrest and whether there was probable cause to detain or arrest.[27]

### 1. Detention

Rodriguez contends that the facts in *Amores v. State* are analogous to the present case.[28] In *Amores*, a police officer received a radio broadcast regarding a possible apartment burglary. The police broadcast consisted of a statement that there was a "burglary in progress" involving a " 'black male' putting something in the trunk of a car." [29] The officer arrived at the apartment complex within one minute of receiving the call and observed Amores sitting in the driver's seat of a vehicle. The officer blocked the vehicle, pulled his revolver and ordered the defendant to get out of the car and to lie face down on the parking lot. The officer gave the defendant a pat-down and found no weapons. He then searched the car and found a gun in the car and cocaine in the trunk. In reversing the case, the Court of Criminal Appeals found that the facts were sufficient to constitute an arrest and not merely a detention, and that the arrest was unlawful.[30]

Rodriguez argues that facts of the present case are sufficiently similar to *Amores* to show that Rodriguez was arrested, not detained, when first stopped by the police.

While searching the vehicle for weapons, Officer Wilson discovered both a pistol and a sawed-off shotgun, the same kinds of weapons used by Vargas' assailants. Shortly after discovering the weapons, a check on the license plate revealed that the vehicle had recently been stolen from a theater. The State argues that discovery of the weapons and knowledge that the car was stolen gave the officers probable cause to arrest.

 Once a suspect is lawfully detained for investigation, the officer may conduct a limited search for weapons where it is reasonably warranted for his safety and the safety of others.[31] This includes a protective

---

**26.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997).

**27.** See *Amores v. State*, 816 S.W.2d 407 (Tex. Crim.App.1991).

**28.** *Id.*

**29.** *Id.* at 410.

**30.** *Id.* at 412.

**31.** *Ramirez v. State*, 672 S.W.2d 480, 482 (Tex. Crim.App.1984); *Alexander v. State*, 879 S.W.2d 338, 342 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

search of a detainee's vehicle when the officer has a reasonable belief, based on specific and articulable facts, that the detainee may pose a danger to the officer or to others.[32]

Facts known by the officer which fall short of probable cause for an arrest may still justify a temporary investigation or detention.[33] Under a valid *Terry* stop, officers are allowed to briefly question a suspicious person about his identity, his reason for being in the area or location, and to make similar reasonable inquiries of a truly investigatory nature.[34]

◼ Probable cause to detain for investigatory purposes may come from a police broadcast based on reliable information furnished by an otherwise credible, known private citizen whose only contact with the police or criminal activity results from having witnessed a criminal act.[35] In determining whether the police conduct in an investigatory detention is reasonable, the totality of the circumstances are reviewed.[36]

◼ The facts in Rodriguez' case are similar to those in *Gaines v. State*.[37] There, an officer pulled over an automobile based on a broadcast description of a vehicle and its occupants who were suspected of having been involved in a burglary. When the officer spotted the vehicle, he immediately pursued it and pulled it over. When the driver of the vehicle and the passenger, Gaines, failed to produce requested identification, the officer drew his gun and proceeded to arrest the men, handcuffing them and placing them in separate cars. The officer then searched the vehicle and found a canvas bag which implicated the suspects in the burglary. The El Paso court held that the officer's actions preceding his discovery of the canvas bag

were proper because those actions were part of his investigatory detention of Gaines and the car's driver.[38]

The facts in this case differ from *Gaines* in at least one significant way. In *Gaines,* the officer asked the suspects for identification. This request, along with the suspects' inability to produce identification, was key to the court's finding that the officer's actions constituted a valid investigatory detention.

In *Flores v. State*,[39] officers responded to a broadcast description of a vehicle whose occupants were suspected of firing gun shots from the vehicle. A police officer stopped the vehicle, exited her patrol car, and pulled her revolver. She asked both occupants of the car to step out and put their hands on the vehicle. When a second officer arrived at the scene, he looked in the car and saw an ammunition clip lying in the vehicle and then searched the vehicle's console, where he found a pistol. This second officer then handcuffed the suspects.

◼ Citing *Amores* and Article 15.22 of the Code of Criminal Procedure, the San Antonio court held that these facts showed that the officers' actions constituted an arrest and not a detention because of the degree to which Flores' liberty was restricted or restrained.[40] Under Article 15.22, an arrest occurs when a person has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without warrant.[41] An arrest occurs when a person's liberty of movement is restricted or restrained.[42]

◼ Where no investigative questioning precedes an officer's conduct which restricts or restrains a person's liberty of movement,

---

**32.** *Alexander,* 879 S.W.2d at 343.

**33.** *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906–07; *Gaines v. State,* 888 S.W.2d 504, 508 (Tex.App.—El Paso 1994, no pet.).

**34.** *Id.*

**35.** *Gaines,* 888 S.W.2d at 509, *citing Esco v. State,* 668 S.W.2d 358, 360 (Tex.Crim.App.1982).

**36.** *Id.*

**37.** *Id.* at 504.

**38.** *Id.* at 510.

**39.** 895 S.W.2d 435 (Tex.App.—San Antonio 1995, no pet.).

**40.** *Id.* at 441.

**41.** Tex.Code Crim. Proc. Ann. art. 15.22 (Vernon 1977).

**42.** *Amores,* 816 S.W.2d at 411.

the detention rises to the level of an arrest.[43] In *Amores*, no questioning of appellant ever occurred. Similarly, Rodriguez and his companions were not questioned. The officers did not pursue any investigatory action before drawing their weapons and taking Rodriguez and his companions into custody. Therefore, we find that Rodriguez was under arrest, not merely detained for investigatory purposes, when placed in custody.

### 2. Probable Cause to Arrest

We must next determine whether officers had probable cause to arrest Rodriguez. A police officer may arrest a juvenile only when there is probable cause to believe that the juvenile engaged in delinquent conduct or conduct indicating a need for supervision or that the juvenile violated a condition of probation as specified in Section 52.01 of the Family Code.[44]

■■■■ Warrantless arrests are allowed in Texas in limited circumstances as set out in the Code of Criminal Procedure.[45] Article 14.04 provides for warrantless arrests "[w]here it is shown by satisfactory proof to a peace officer, upon the representation of a *credible person*, that a felony has been committed, and that the offender is about to escape." [46] Under Article 14.04, there are four basic requirements that must be met: 1) *the person who gives the information to the peace officer must be credible*; 2) the offense must be a felony; 3) the offender must be about to escape; and 4) there must be no time to procure a warrant.[47] A "totality of the circumstances" test applies for determining probable cause based on a warrantless search and seizure.[48]

Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense.[49]

■■■■ Before the Court of Criminal Appeals' decision in *Amores*, the rule was that police broadcasts, based on probable cause, reporting a felony and a description of the suspect satisfied the requirements for arrest under Article 14.04.[50] In *Amores*, the Court of Criminal Appeals determined that, as a general rule, a police broadcast, standing alone, is not sufficient to establish probable cause for an arrest.[51] There must exist additional facts available to the officer, or the dispatcher, which would warrant a person of reasonable caution to conclude that a crime had been or was being committed.

The Court of Criminal Appeals held that the arresting officer in *Farmah v. State* [52] did not have enough information for probable cause to arrest. The only information the officer had, according to the court, was that the *car* Farmah was in was connected with an abduction and sexual assault.[53] The court stated that nothing in the record indicated that the officer had any basis to connect the *appellant* with the suspected offenses. Nine days had passed between the time of the victim's report of the crimes and the time the

---

43. *Burkes v. State*, 830 S.W.2d 922, 925 (Tex. Crim.App.1991).

44. See Tex. Fam Code Ann. § 52.01(a) (Vernon 1996), *amended by* Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 6.08, 1997 Tex. Gen. Laws 357 (current version at Tex Fam.Code Ann. § 52.01 (Vernon Supp.1998)); *Lanes v. State*, 767 S.W.2d 789, 801 (Tex.Crim.App.1989).

45. Tex.Code Crim. Proc. Ann. art. 14.01, et seq. (Vernon 1977 & Supp.1998).

46. Tex.Code Crim Proc. Ann. art. 14.04 (Vernon 1977) (emphasis added).

47. *Shipman v. State*, 935 S.W.2d 880, 884 (Tex. App.—San Antonio 1996, pet. ref'd), *citing Crane v. State*, 786 S.W.2d 338, 346 (Tex.Crim.App. 1990).

48. *Amores*, 816 S.W.2d at 413.

49. *Id.*

50. *See Crane*, 786 S.W.2d at 346; *Woodward v. State*, 668 S.W.2d 337 (Tex.Crim.App.1982)(op. on reh'g);*Esco v. State*, 668 S.W.2d at 360 (Tex. Crim.App.1982); *Myre v. State*, 545 S.W.2d 820, 826 (Tex.Crim.App.1977).

51. *Amores*, 816 S.W.2d at 416.

52. 883 S.W.2d 674 (Tex.Crim.App.1994).

53. *Id.* at 678.

arresting officer saw the appellant with the car.[54]

In *Smith v. State*,[55] the Court of Criminal Appeals stated that a report by a citizen, whose credibility is unknown, is akin to an anonymous phone call and may not establish probable cause.[56] In *Smith*, the reporting citizens were bystanders at the club to which the officer was dispatched. Three women outside of a bar accused Smith of having a gun in the bar. None of the women told the officer that appellant had been involved in the fight that apparently had occurred inside of the club and none of them told the officer how they knew that appellant had a gun. The opinion does not reflect that the three women identified themselves, and they did not testify at trial. The Court of Criminal Appeals held the information from the women was no better than if the women had made an anonymous telephone call to tell the officer that there had been a fight inside the club and that the appellant had a gun. Therefore, the Court found that there was "no evidence that might have shown that it was represented to [the officer] by a credible person that appellant had committed a felony and that he was about to escape." [57]

Texas Courts of Appeals faced with warrantless arrests based on police broadcasts finding probable cause seem to focus on one of two issues: 1) whether the arresting officer's information originated from a "known, credible person" or 2) whether any other action, regardless of how minute, gave the officer additional probable cause to arrest. For example, in *Flores v. State*,[58] a caller "precisely described" a suspect vehicle in appearance and location.[59] Those observations were confirmed by an officer in the area. The San Antonio court, in holding that there was sufficient probable cause to arrest, distinguished the case from *Amores* by saying that the caller, who testified at trial, *identified himself by name* to the 9-1-1 dispatcher before hanging up the phone, giving both his name and mobile telephone number. This information, the court stated, gave an "additional element of believability" that was lacking in *Amores*.[60]

In *Gaines v. State*,[61] the El Paso court held that there was sufficient probable cause for a detention based on a police broadcast where the broadcast was more specific than the one in *Amores*.[62] In *Gaines*, the broadcast consisted of information that (1) a burglary had occurred in the vicinity a matter of minutes before the broadcast; (2) the suspects were two black males; (3) the suspects had driven off in a late model yellow Honda Civic automobile; and (4) the suspects were last seen traveling south on a specific street. The record also showed that the caller *identified herself* to the dispatcher.

In *Shipman v. State*,[63] the San Antonio court was faced with the issue of probable cause for a warrantless arrest based on a police broadcast and word of mouth to the arresting officers. The broadcast information came from the victim and other citizens who reported suspicious people and activities in the area. The victim, described by the court as a "credible person," gave information about the number of suspects, ethnic backgrounds, and descriptions relating to the suspects' hair.[64] Other reports included descriptions of the suspects and suspicious activities that tied the suspects to the reported crime. The court held that, while the issue was a close one, the arrest was supported by probable cause.[65]

54. *Id.* at 676.

55. 739 S.W.2d 848 (Tex.Crim.App.1987).

56. *Id.* at 852.

57. *Id.* at 852.

58. 895 S.W.2d 435 (Tex.App.—San Antonio 1995, no pet.).

59. *Id.* at 442.

60. *Id.*

61. 888 S.W.2d 504 (Tex.App.—El Paso 1994, no pet.).

62. *Id.* at 509.

63. 935 S.W.2d 880 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

64. *Id.* at 884.

65. *Id.* at 885.

■ The report in the present case was made by the victim, Vargas. Vargas *identified himself* to the dispatcher and gave his address. He described his assailants' vehicle as a 1986 dark blue four-door and gave the vehicle's license plate number. Vargas also identified the number of his assailants and described the firearms with which his assailants were armed. This information was broadcast and within ten-to-fifteen minutes officers located a vehicle, in the vicinity of the robbery, matching the broadcast description.

The information known to the dispatcher in this case was more specific than that broadcast in *Amores*. Because Vargas identified himself by name to the dispatcher and gave his address, there is also an "additional element of believability that was lacking in *Amores*."[66] If the requesting officer has sufficient information to establish probable cause, then the arresting officer's arrest will be justified.[67] Because Vargas identified himself and gave specific details of his assailants' vehicle and firearms, and because of the temporal and physical proximity of where the robbery occurred and where Rodriguez was arrested, we hold that the officers had sufficient probable cause to arrest. Therefore, the arrest was not unlawful.

### 3. Fruits of Arrest

■ Rodriguez contends that Officer Wilson's testimony about Vargas' out-of-court identification was inadmissible because it was the fruit of his unlawful arrest. Failure to move to suppress evidence obtained as a result of an unlawful arrest may be ineffective assistance of counsel.[68] He also argues that his statements to both Officer Wilson and Officer McDonald were inadmissible because they were the product of his unlawful arrest. Because we have determined that Rodriguez' arrest was not unlawful, the out-of-court identification and statements were

not inadmissible as products of an unlawful arrest.

This point of error is overruled.

### B. Arrest of a Juvenile

Rodriguez argues that trial counsel was ineffective because he did not object to the out-of-court identification and testimony of Rodriguez' inculpatory statements. He contends that this evidence was inadmissible because the officers' actions show intentional attempts to circumvent laws governing the detention and interrogation of a juvenile.

■ Issues involving substantive rights of pretransfer juveniles, such as the admissibility of statements, though raised in the criminal forum, are controlled by applicable provisions of the Family Code until the moment transfer from juvenile court jurisdiction is ordered.[69] An officer detaining a juvenile must comply with each of the provisions of the Family Code.[70] Violation of this statute renders illegally obtained evidence inadmissible.[71]

#### 1. Inculpatory Statements

■ Rodriguez' first statement was made shortly after his arrest, while he was in Officer Wilson's car en route to Vargas' apartment complex for identification. Officer Wilson testified that, during the short drive, Rodriguez told him that he owned the shotgun found in the car and that the car was stolen. Rodriguez was then identified by Vargas at the apartment complex. He made a second inculpatory statement to Officer McDonald at the juvenile detention center on the day of the arrest. McDonald read Rodriguez his rights and, before McDonald asked any questions, Rodriguez admitted that he was the one who had the shotgun and that he was the one who pointed the weapon at Vargas.

**66.** See *Flores*, 895 S.W.2d at 442.

**67.** *Farmah*, 883 S.W.2d at 678.

**68.** *Cooke v. State*, 735 S.W.2d 928, 930 (Tex. App.—Houston [14 th Dist.] 1987, pet. ref'd).

**69.** *Kendrick v. State*, 942 S.W.2d 120, 122 (Tex. App.—Beaumont 1997, no pet.); *see also Griffin*

*v. State*, 765 S.W.2d 422, 427 (Tex.Crim.App. 1989).

**70.** *Anthony v. State*, 954 S.W.2d 132, 135 (Tex. App.—San Antonio 1997, no pet.), *citing Comer v. State*, 776 S.W.2d 191, 196 (Tex.Crim.App.1989).

**71.** *Id*.

Section 51.09 of the Family Code [72] sets out the proper procedure for obtaining juvenile statements. Pursuant to Subsections (b)(1) and (2), a juvenile statement is admissible as evidence if:

(1) when the child is in a detention facility or other place of confinement or in the custody of an officer, the statement is made in writing and the statement shows that the child has at some time prior to making thereof received from a magistrate a warning.

. . . .

(2) it be made orally and the child makes a statement of facts or circumstances that are found to be true, which conduct tends to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed.

In *Travis v. State*,[73] the defendant, a juvenile, argued that his inculpatory statements describing the events surrounding two murders were inadmissible. Before the statements were made, police investigating the murders had a variety of suspicions regarding the perpetrator or perpetrators, and a general idea of the circumstances of said murders, but nothing solid.[74] However, as a result of the defendant's conversation with a detective, the actual murder weapons were recovered. Furthermore, the testimony indicated that the various conversations with the defendant during which the statements were made did not take place in coercive atmospheres or involve interrogation techniques that were of such a nature that the confession was likely to have not been "the product of a rational intellect and a free will."[75] The

Beaumont court held that the statements were admissible under Section 51.09(b)(2).[76]

Under Subsection (d)(2), the child's statement is admissible if the statement does not stem from custodial interrogation.[77] In *Laird v. State*,[78] the defendant, after being arrested in Pennsylvania and read his rights, was told by the Pennsylvania officer that he was not going to be asked any questions.[79] Laird hung his head and stated, "I know what I did. I'm sorry." Laird spontaneously uttered these incriminating remarks after he had been at the station for only forty-five minutes. He was taken to a juvenile detention facility approximately six hours after his arrest. On appeal, Lair argued that his statement was inadmissible because it did not lead to inculpatory evidence, it was given while he was illegally detained because he was in an adult cell, rather than at a juvenile processing office, and the Pennsylvania police held him too long before taking him to juvenile authorities.[80] The court held that Section 51.09(d)(2), which allows an oral statement to be admitted if it is not in response to custodial interrogation, applied and that admission of the statement was not error.[81]

In *Melendez v. State*,[82] the defendant called a police officer, saying that he had additional information regarding a murder. Melendez agreed to come to the police station, and an officer picked him and his father up and drove them to police headquarters. They did not handcuff Melendez. At headquarters, the defendant told the officer, "I killed her. I didn't mean to kill her."[83] The officer testified that he had not asked any questions before that statement, but he had

**72.** TEX. FAM.CODE ANN. § 51.09 (Vernon 1996), *amended by* Act of June 2, 1997, 75th Leg., R.S., ch. 1086, § 4, 1997 Tex. Gen. Laws 4181 (current version at TEX. FAM.CODE ANN. § 51.059 (Vernon Supp.1998)).

**73.** 921 S.W.2d 559 (Tex.App.—Beaumont 1996, no pet.).

**74.** *Id.* at 569.

**75.** *Id.; citing Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290, 304 (1978); *Griffin,* 765 S.W.2d at 428.

**76.** *Travis,* 921 S.W.2d at 569.

**77.** TEX. FAM.CODE ANN. § 51.09(d)(2).

**78.** 933 S.W.2d 707 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd).

**79.** *Id.* at 710.

**80.** *Id.* at 712.

**81.** *Id.* at 713–14.

**82.** 873 S.W.2d 723 (Tex.App.—San Antonio 1994, no pet.).

**83.** *Id.* at 725.

told Melendez there were inconsistencies in his statement. The defendant was then taken before a magistrate for warnings, but he refused to give a statement. The San Antonio court stated that, even when the juvenile is in custody, his statement will still be admissible if it was not elicited by questioning or its counterparts.[84]

Although Rodriguez was in custody when both statements were made, the statements were not made in response to custodial *interrogation*. Therefore, had trial counsel objected, the trial court would not have erred in allowing Rodriguez' inculpatory statements in evidence.

### 2. Identification

Rodriguez argues that trial counsel was ineffective for failing to object to identification testimony admitted through Officer Wilson because such testimony was the result of the officers' improper actions under Sections 52.01 and 52.02 of the Family Code. Section 52.01(a)[85] and Section 52.02(a)[86] require probable cause before any detention and that the accused be taken to a juvenile processing office without unnecessary delay and without first taking the juvenile to any place other than a juvenile processing office.

 Vargas testified that approximately thirty to forty minutes after he called 9–1–1, police came to his apartment and asked him to identify suspects in the robbery. He testified that, at that time, he positively identified the person who had robbed him at gun point. Two years later at trial, Vargas was not able to positively identify Rodriguez as his assailant. However, Officer Wilson testified to Vargas' positive identification at the time of the robbery.

In *In re R.R.*,[87] the appellant argued that his confession was given in violation of Section 52.02 because he was not taken, without unnecessary delay, to a juvenile processing office. Thus, he argued, his confession was a product of an illegal detention.[88] Officers picked up R.R. for questioning based on information obtained while investigating a murder. The officers went to R.R.'s home, identified themselves as police officers, and asked R.R. and his brothers to accompany them for questioning. R.R. was taken to the Criminal Investigation Division Police Department, where a witness positively identified him as being directly involved in the murder. R.R. was then arrested and taken to a judge for *Miranda* warnings. On the way back to the police station, R.R. pointed out a co-defendant's house. At the police station, R.R. was taken to an office, where he gave a statement. The Corpus Christi court held that, because the record showed only that R.R. had been taken to the police station and not detained in an office within the police station designated as the "juvenile processing office," and because there was no evidence in the record regarding the officer's authority to interrogate juveniles or to take juvenile statements, the State failed to prove its compliance with the Family Code's mandatory procedures.[89] The court held R.R.'s confession was illegally obtained. The court did not address the issue of whether the witness identification was admitted at trial or, if so, whether such identification was admissible.

*In re D.Z.*[90] had a similar result. In that case, D.Z. was asked to accompany officers to the police station for questioning. At the station, officers called for a magistrate to administer warnings. After being read his *Miranda* warnings by an officer, but before the magistrate arrived, D.Z. gave an oral statement regarding the crime being investi-

84. *Id.; citing Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Stevens v. State*, 671 S.W.2d 517, 520 (Tex.Crim. App.1984).

85. Tex. Fam.Code Ann. § 52.01(a).

86. Tex. Fam.Code Ann. § 52.02(a) (Vernon 1996), *amended by* Act of June 1, 1997, 75th Leg., R.S., ch. 1013, § 15, 1997 Tex. Gen. Laws 3692 (current version at Tex. Fam.Code Ann. § 52.02 (Vernon Supp.1998)).

87. 931 S.W.2d 11 (Tex.App.—Corpus Christi 1996, no writ).

88. *Id.* at 13.

89. *Id.* at 14.

90. 869 S.W.2d 561 (Tex.App.—Corpus Christi 1993, writ denied).

gated. D.Z. complained on appeal that the State did not comply with Section 52.02 of the Family Code because he was taken to a detective's office rather than to a designated juvenile processing office. The court held that, because there was no evidence in the record that D.Z. spoke with a designated juvenile officer or that he was taken to a designated juvenile processing office, the State did not comply with the detailed and explicit procedures enacted by the Legislature for taking juveniles to court.[91] Therefore, the court held that the State obtained D.Z.'s confession illegally, and thus, it was improperly admitted at adjudication.

Rodriguez was not taken to a juvenile processing office or officer without delay or before being taken any other place. He was taken to Vargas' apartment complex for identification. As a result of this show-up identification, Officer Wilson testified that Vargas identified Rodriguez as his assailant. Because the State did not comply with the mandatory procedures set out in Section 52.02, the out-of-court identification should not have been admitted at trial. Therefore, trial counsel should have moved to suppress the out-of-court identification and objected to Officer Wilson's testimony about the out-of-court identification.

■ The court in *Cooke v. State*[92] held that failure to move to suppress identification testimony obtained from an unlawful arrest rendered counsel's assistance ineffective. In *Cooke*, the defense's entire strategy at trial was mistaken identity.[93] The court held that to not move to suppress such evidence could serve no sound purpose in the defense strategy.

Under the second prong of *Strickland*, we must next determine whether Rodriguez' trial counsel's deficient performance so prejudiced his defense that he was deprived of a fair trial. Rodriguez must show that there is a reasonable probability that, but for his

counsel's errors, the result of the proceeding would have been different.

Evidence properly admitted showed that Rodriguez admitted to robbing Vargas at gunpoint. We hold that, even without Officer Wilson's testimony regarding the out-of-court identification, the result of the trial would not have been different.

This point of error is overruled.

### C. Out-of-Court Identification as Hearsay

■ Rodriguez also argues that trial counsel should have objected to Officer Wilson's testimony of the out-of-court identification because the testimony was hearsay not falling within any exception.[94] However, Rule 801(e)(1)(C) provides that a statement is not hearsay and is admissible if the declarant testifies and is subject to cross-examination concerning the statement and the statement is one of identification of a person made after perceiving him.[95]

Rodriguez argues that Officer Wilson's statement does not fall within this exception because Vargas never made an *in-court* identification of Rodriguez and because he was never *specifically* cross-examined as to whether he made a positive identification at the time of the robbery.

Rule 801(e)(1)(C) does not require that an in-court identification be made in order for the rule to apply. Further, although Rodriguez' trial counsel never specifically asked Vargas if he made a positive identification at the time of the robbery or if Vargas could identify his assailants at trial, Vargas was cross-examined about his out-of-court identification. Finally, Rule 801(e)(1)(C) requires that the declarant testify at trial and be *subject to* cross-examination concerning the

---

**91.** *Id.* at 565.

**92.** *Cooke v. State,* 735 S.W.2d 928.

**93.** *Id.* at 930.

**94.** Tex.R.Crim. Evid. 801(d) (Vernon 1977)(now Tex.R. Evid. 807(d)).

**95.** Tex.R.Crim. Evid.801(e)(1)(C) (Vernon 1997)(now Tex.R. Evid. 801(e)(1)(C)); *Jackson v. State,* 846 S.W.2d 411, 414 (Tex.App.—Houston [14th Dist.] 1992, no pet.).

statement, not that the declarant *actually be* cross-examined about the identification.[96]

Because the testimony was admissible, Rodriguez' trial counsel was not ineffective by failing to object to Officer Wilson's statement regarding Vargas' identification of Rodriguez. This point of error is overruled.

### D. Rule 404(b)—Stolen Car

 Officer Wilson testified that the vehicle Rodriguez was in at the time of his arrest had been reported stolen just hours before the robbery. He also testified that, during the drive to Vargas' apartment complex, Rodriguez admitted that the car was stolen. Rodriguez contends that trial counsel was ineffective for not objecting to this testimony because it was inadmissible under Rule 404(b) of the Rules of Criminal Evidence.[97]

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

Rodriguez argues that none of the exceptions which allow evidence of other crimes, wrongs, or acts to be admitted applies.

The State also argues that the evidence falls within the exceptions set out in Rule 404(b). Evidence of the stolen car shows the intent, motive, and preparation of Rodriguez and his cohorts to commit the aggravated robbery of Vargas.

 Evidence of other crimes, wrongs, or acts may be admissible if it has relevance *apart* from its tendency to prove the character of a person by showing actions in conformity therewith.[98] On the other hand, if extraneous offense evidence is not relevant apart from supporting an inference of character conformity, it is absolutely inadmissible under Rule 404(b).[99]

The State cites to *Smith v. State*.[100] There, the defendant complained of admission of his extraneous offense of aggravated robbery in his trial for capital murder. The court held that the defendant's flight from the first offense, the fact that his car keys had been left, and his need for an automobile to effectuate his escape from the robbery illustrated the defendant's motive and intent when he came upon his victim.[101] In this case, the connection between the initial offense and Rodriguez' robbery of Vargas is more tenuous than in *Smith*. Officer Wilson testified that the car was stolen "a few hours" before the robbery.

In *Rogers v. State*,[102] the Court of Criminal Appeals set out a two-part test to be applied in determining the admissibility of background evidence, that is, evidence of other offenses connected with the primary offense, referred to as "same transaction contextual evidence" and general background evidence, referred to as "background contextual evidence."[103] The first question to be addressed is whether the background evidence is relevant. If so, the next issue to be resolved is whether the evidence should be admitted as an exception under Rule 404(b). Only if the facts and circumstances of the instant offense would make little or no sense without also bringing in the same transaction contextual evidence of other crimes or bad acts should such evidence be admitted.[104]

---

**96.** Tex.R.Crim. Evid. 801(e)(1)(C).

**97.** Tex.R.Crim. Evid. 404(b) (Vernon 1997) (now Tex.R. Evid. 404(b)).

**98.** *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1991).

**99.** *Id.*

**100.** 898 S.W.2d 838 (Tex.Crim.App.1995).

**101.** *Id.* at 842.

**102.** 853 S.W.2d 29, 33 (Tex.Crim.App.1993).

**103.** *Id.* at 32

**104.** *Id.* at 33.

Evidence that the vehicle in which Rodriguez was riding was stolen was not necessary to the jury's understanding of the crime with which Rodriguez was being tried. However, such evidence was not specifically connected to Rodriguez. Officer Wilson testified that, at the time of Rodriguez' arrest, he ran the car's license plates and discovered that the car had been stolen a few hours prior to the robbery. Officer Wilson did not testify that Rodriguez had stolen the car. Furthermore, Vargas testified that his assailant was a passenger in the car at the time of the robbery. Nothing in the evidence presented suggests that Rodriguez stole the car or that he was aware that the car was stolen.

Rule 404(b) prohibits the admission of evidence of a person's prior crimes, wrongs, or acts to prove the character of a person and to show *that person's* actions in conformity with such character. Officer Wilson did not testify to any prior bad act of Rodriguez. Therefore, Rule 404(b) does not bar that testimony, and Rodriguez' trial counsel was not ineffective for failing to object to the testimony.

This point of error is overruled.

### E. Rule 404(b) & Hearsay—Stolen Shotgun

█ Rodriguez complains that Officer Wilson's testimony regarding a stolen shotgun was inadmissible hearsay under Rules 801 and 802 not falling within any exception and inadmissible as evidence of other crimes, wrongs, or acts under Rule 404(b), and that trial counsel was ineffective in failing to properly object to this evidence.

Officer Wilson testified that a shotgun was found in the vehicle at the time of Rodriguez' arrest and that Rodriguez claimed ownership of the shotgun. Officer Wilson subsequently testified that the shotgun was stolen.

Q At some point in time during your investigation of this case, were you able to verify whether Kenned Rod-

riguez actually owned the shotgun that you found?

A I believe Officer Maeker asked the dispatcher to check the weapons, both weapons, to see if either one of them had been stolen. And I don't believe that night that we found out that the shotgun was stolen, but later on, it did come up that—

[Defense Counsel]: Objection, hearsay.

THE COURT: Sustained.

█ In addition to a timely request, objection, or motion, the record must show that the defendant pursued his objection to an adverse ruling.[105] The trial court must rule adversely or there is nothing to complain about on appeal.[106] Rodriguez' objection to the testimony about which he complains was sustained. Rodriguez did not seek either an instruction to disregard or a mistrial.

In *Oliver v. State*,[107] trial counsel objected to the admission of certain evidence but failed to request a mistrial. The trial court, upon sustaining the objection, instructed the jury to disregard the witness' last statement. The Houston court stated that as a general rule, error in admitting improper evidence may be cured by the trial court's withdrawal of the evidence and an instruction to disregard.[108] Therefore, trial counsel's failure to request a mistrial does not rise to a level of ineffective assistance of counsel. In this case, no limiting instruction was given. Rodriguez' trial counsel's failure to request such an instruction was improper.

Looking again to the second prong of *Strickland*, we must determine whether this error so prejudiced Rodriguez' defense that he was deprived of a fair trial. We hold that this testimony, standing alone, did not prejudice Rodriguez such that the outcome would have been different had the testimony not come in.[109]

This point of error is overruled.

**105.** *Hernandez v. State*, 914 S.W.2d 226, 230 (Tex.App.—Waco 1996, no pet.).

**106.** *Id.*

**107.** *Oliver v. State*, 881 S.W.2d 87, 91 (Tex. App.—Houston [1st Dist.] 1994), *vacated on other grounds*, 872 S.W.2d 713 (Tex.Crim.App.1994).

**108.** *Id., citing Livingston v. State*, 739 S.W.2d 311, 335 (Tex.Crim.App.1987).

**109.** *Wenzy v. State*, 855 S.W.2d 52, 57 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).

## F. Jury Argument

 Rodriguez argues that the prosecutor made an improper jury argument by asking the jurors to heed to expectations of the community and because the argument injected new and harmful facts into evidence. He contends that trial counsel was ineffective for failing to object to this argument.

In his brief, Rodriguez quotes the following language in the prosecutor's closing argument:

> When you leave here and you go home or to work, once the case is over, then you'll be able to discuss the case. And your children or your parents or your sisters or your brothers or maybe a close friend or a coworker, they're going to say: Well, tell me about it now that you can talk about it. I want to hear the facts about the case.
>
> . . . .
>
> And they're going to say: Well, y'all found him guilty, didn't you? What are you going to say, ladies and gentlemen? Thank you.

 Jury argument should fall within the areas of (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) a plea to law enforcement.[110] Argument which is a call to the jury to heed the demands, desires, or expectations of the community is improper.[111] In *Cortez v. State*,[112] the prosecutor argued that "the only punishment that you can assess that would be any satisfaction at all to the people of this county would be life."[113] The Court of Criminal Appeals held that the jury argument, designed to induce the jury to convict a defendant because "the people" want a conviction, was improper.[114]

The State contends that the prosecutor's jury argument is proper when viewed in its unedited version as follows:

> When you leave here and you go home or to work, once the case is over, then you'll be able to discuss the case. And your children or your parents or your sisters or your brothers or maybe a close friend or a coworker, they're going to say: Well, tell me about it now that you can talk about it. I want to hear the facts about the case.
>
> *And you're going to say: Okay. Well, it was an aggravated robbery and it happened a couple of years ago. And the State brought the victim in and he told about how in the middle of the morning about 4 o'clock a man got out of a car with a shotgun, pointed it at him, demanded his money. He gave him the money. He asked for his jewelry.*
>
> *We heard that the car then took off and that this person went to the phone and called the police immediately and that two or three miles away we heard the officers stopped the exact car with the exact license plate that had three people in it, as the complainant said.*
>
> *The officers said they found a shotgun and a pistol, just as the complainant had said, and within 30 minutes, they took the three of them back there. And the guy that we were listening to in the case that we were trying, the victim picked him out right then, that that was the one that held the shotgun on him and took his money.*
>
> And they're going to say: Well, y'all found him guilty, didn't you? What are you going to say, ladies and gentlemen? Thank you.

(Emphasis added.)

 The italicized portion of the argument omitted in Rodriguez' brief is necessary to a proper understanding of the context of the prosecutor's argument. When examining a challenge to jury argument, the reviewing court should consider the challenged remark in the context in which it appears.[115]

---

110. *Brown v. State*, 692 S.W.2d 497, 502 (Tex. Crim.App.1985).

111. *Cortez v. State*, 683 S.W.2d 419 (Tex.Crim. App.1984).

112. *Id.* at 421.

113. *Id.* at 420.

114. *Id.*

115. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim.App.1988).

The argument in the present case was similar to the one reviewed in *Bell v. State* [116] where the prosecutor discussed, over objections, how the jurors' neighbors and friends would react to the evidence.[117] The prosecutor argued, "[R]emove yourself [mentally] to your home and think about you talking to your friends and your neighbors ... and remember and think about how they will ask you at the end of [the] case when it's all over." [118] The court held that these remarks were part of a summary of the evidence, a request to the jury to take their common sense into the jury room with them, and a plea for a verdict based on logic rather than emotion. The prosecutor did not assert or imply that the community demanded or expected a conviction.[119]

Inviting the jury to look at the facts of the case from the perspective of others is not a proper approach to jury argument because the jurors should view those facts from their own perspectives. However, in the present case, the thrust of the prosecutor's argument was to encourage the jurors to summarize the evidence in their minds by asking them to imagine themselves explaining how they reached their verdict. The statements complained of did not call on the jury to heed the expectations of the community.

This point of error is overruled.

### G. Punishment Phase

■ Rodriguez also complains of ineffective assistance of counsel during the punishment phase. When reviewing the effectiveness of a criminal defendant's trial counsel at the punishment phase of a prosecution, the reviewing court should determine whether the defendant received reasonably effective assistance of counsel.[120]

### 1. Evidence of Juvenile Unadjudicated Felony—Burglary of a Motor Vehicle

During punishment, the State introduced evidence of Rodriguez having committed a burglary of a motor vehicle on April 9, 1994, at which time Rodriguez was a juvenile. Rodriguez contends that this evidence was inadmissible during the punishment phase of the trial under Article 37.07, § 3 of the Code of Criminal Procedure. Rodriguez complains that his counsel was ineffective for failing to object to this evidence because it was evidence of an act committed by Rodriguez when he was a juvenile for which there was no conviction.

Article 37.07, § 3(a) [121] provides for the admissibility of any other evidence of an extraneous crime or bad act that is shown by evidence beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act so long as the court deems it relevant. Additionally, evidence of an adjudication of delinquency may be offered by the state and the defendant if the violation was a felony, subject to certain exceptions.[122]

Rodriguez argues that evidence of juvenile delinquency is *inadmissible* at a punishment hearing *unless* the delinquency involves a felony violation *and* an adjudication is made based on that delinquency. Rodriguez is arguing that Article 37.07 requires an adjudication of a juvenile delinquency, and because the evidence failed to show any adjudication on the charge of burglary of a motor vehicle allegedly committed when Rodriguez was a juvenile, such delinquency is inadmissible.

Rodriguez cites *Murphy v. State* [123] to support his interpretation of Article 37.07, § 3. In *Murphy*, the Fort Worth court held that a

**116.** 724 S.W.2d 780 (Tex.Crim.App.1986).

**117.** *Id.* at 801.

**118.** *Id.* at 801–02.

**119.** *Id.* at 802.

**120.** *Valencia v. State,* 946 S.W.2d 81, 83 (Tex. Crim.App.1997), *citing Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex.Crim.App.1980).

**121.** Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.1998).

**122.** *Id.*

**123.** 860 S.W.2d 639 (Tex.App.—Fort Worth 1993, no pet.).

finding that the defendant violated his juvenile misdemeanor probation by committing a felony is not an adjudication of delinquency based upon a felony violation within the meaning of Article 37.07, § 3.[124] The court held that the trial court erred by admitting evidence of a juvenile adjudication of delinquency based on a misdemeanor violation. Adjudication of delinquency was not at issue in the present case.

 Article 37.07, § 3 allows evidence of an adjudication of delinquency under certain circumstances *in addition* to the provision quoted above providing for the admissibility of other evidence of extraneous crimes or bad acts.[125] Evidence of a defendant's prior unadjudicated juvenile offense is admissible under Article 37.07, § 3(a) so long as the requirements set out in the article are met.[126]

Rodriguez's trial counsel was not ineffective in failing to object to the admission of the evidence. This point of error is overruled.

### 2. Car-Jacking Testimony

 Also during the punishment phase, Officer Ronald Odums testified that, on February 9, 1996, he received a call regarding a car-jacking at a gas station and that, upon arriving at the scene, he was flagged down by the complainant, who told him that his car had just been stolen. Rodriguez was later linked to the theft by the testimony of several other witnesses. Rodriguez argues that Officer Odums' testimony was based on hearsay because the complainant was never called to testify and was, therefore, inadmissible. Trial counsel did not object to the testimony. Rodriguez argues that this failure to object was ineffective assistance of counsel.

The State argues that Officer Odums' testimony regarding the complainant's statement is testimony of a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition, an exception to the hearsay rule.[127] We agree. Therefore, trial counsel was not ineffective in failing to object to the testimony.

This point of error is overruled.

### 3. Co–Defendant's Testimony

 Rodriguez' trial counsel called Horatio Ramos, a co-defendant charged in the robbery, to establish that Rodriguez was used by Ramos to commit the robbery because Rodriguez was a juvenile. On cross-examination, the prosecutor was able to present evidence that this co-defendant had told Officer McDonald that Rodriguez had committed a number of other robberies and stolen a number of cars. Rodriguez contends that trial counsel was ineffective in not objecting to this testimony.

In *Cooper v. State*,[128] the defendant was called to the stand during the punishment phase of trial. This exposed the defendant to cross-examination by the prosecutor about his long criminal history. The court, in reversing for a new punishment hearing, stated that such decision by trial counsel could not be justified by any trial strategy.[129] Rodriguez argues that this case is similar in that the decision to put his co-defendant on the stand opened up Rodriguez' criminal background to cross-examination, resulting in a more lengthy sentence.

We cannot say that counsel was not using sound trial strategy by putting Rodriguez' co-defendant on the stand. As the State points out, Ramos could have been used to show that Rodriguez was forced to commit the robbery because of his age, thereby providing the jury with grounds to assess a lighter sentence.

This point of error is overruled.

---

124. *Id.* at 642.

125. Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a).

126. *See McMillan v. State*, 926 S.W.2d 809, 813 (Tex.App.—Eastland 1996, pet. ref'd).

127. Tex.R.Crim. Evid. 803(2) (Vernon 1997) (now at Tex.R. Evid. 803(2)).

128. 769 S.W.2d 301 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd).

129. *Id.* at 305.

### H. Totality of Representation

As noted above, the reviewing court must look at the trial as a whole and not at isolated incidents in determining whether counsel was ineffective.[130] The appellant must prove that his counsel's representation was deficient and that the deficient performance was so serious that it prejudiced his defense.[131] Review of Rodriguez' counsel's representation must be highly deferential, and we indulge a strong presumption that his conduct falls within a wide range of reasonable representation.[132] In that light, we hold that Rodriguez was not prejudiced by the errors made by his trial counsel such that the trial cannot be relied on having produced a just result.

The judgment of the trial court is affirmed.

**130.** *Moore,* 694 S.W.2d at 531.

**131.** *Id.*

**132.** *Hernandez v. State,* 726 S.W.2d 53, 57.