

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00101-CR

_____

CARL LEONARD LIVELY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 20,292-2008

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

A small fender bender in a Wal-Mart parking lot led to the fortuitous discovery of evidence connecting Carl Leonard Lively to a gas station armed robbery. He was convicted of aggravated robbery by a jury, sentenced by the trial judge to forty years' imprisonment, and was ordered to pay a $10,000.00 fine. Lively appeals the judgment of the trial court on grounds that the evidence was insufficient to support his conviction, his counsel rendered ineffective assistance, and the trial court erred in denying his motion to suppress. He also argues that the trial court abused its discretion in overruling Rule 404(b) objections to testimony and evidence obtained from his vehicle after the accident. We affirm the trial court's judgment.

## I.     Factual and Procedural History

Barbara Ann Bryant worked as a clerk for J&J Fastop located in an Exxon gas station in Hawkins, Texas. There were no customers in the store around 8:28 p.m. when she "saw a dark-colored SUV pull up." "[A] white man came in with a camouflage hat and a bandana . . . covering up his nose." The tall, slender man was in his late forties or early fifties, had uneven ears, with one sitting higher than the other, "salt-and-peppered colored hair, and bushy eyebrows of the same color." He was wearing sunglasses, blue jeans, dark work-style boots, and a black belt with a rectangular metal buckle. The man wielded a gun in Bryant's direction and commanded her to "[o]pen the drawer and give me your money." A shocked Bryant frantically placed the money from the cash register on the counter. She complied with the robber's requests

2

to retrieve more money from underneath the counter and stuff all the cash in a bag. While grabbing the money and pointing the gun at Bryant, he said, "Go to the back of the store and don't look back."

Bryant ran to the back of the J&J Fastop and called the police as soon as she was sure the robber had left. Officer A. J. Randell and Officer Eileen Standfield arrived to find Bryant in a hysterical, hypoglycemic state. Bryant calmed down after drinking a soft drink and told the officers the man was in a dark-colored blue or black Chevy Tahoe.[1] The gas station was monitored by several surveillance cameras placed at different angles both inside and outside the J&J Fastop. Review of the video recordings confirmed the description given by Bryant. The only car seen arriving and leaving the Exxon parking lot immediately before and after the robbery was a dark blue Chevy Tahoe with a luggage rack, trailer hitch, bug shield, and brake light at the top back of the vehicle. Randell took pictures from the surveillance cameras to a local mechanic who identified the vehicle as a 2002 model. The officers issued a broadcast advising fellow law enforcement to be on the lookout for a 2002 or newer model Suburban driven by a white male in his late forties with gray hair. The broadcast described the man as five foot and ten or eleven inches tall weighing approximately 190 to 200 pounds. Unfortunately, the robber absconded and three months passed without leads on a suspect.

Fortuitously, Sergeant Damon Boswell experienced a breakthrough on the case while

---

[1]Although Officer Standfield's report said, "Barbara, the lady who worked at the store, told me he left in a two-tone, brown and white Suburban," Bryant denied identifying the vehicle as anything other than a dark-colored SUV.

3

monitoring the handicapped zones in a Wal-Mart parking lot in Gun Barrel City. He heard the crash of a minor collision between a small white vehicle and dark blue 2002 Tahoe with a luggage rack, trailer hitch, bug shield, and brake light at the top back of the vehicle. Lively, who was driving the Tahoe, "was outside of the vehicle and shaking, visibly nervous." Boswell radioed the Tahoe license plate to dispatch and asked for Lively's driver's license. The license plate did not match the Tahoe and Lively's driver's license was expired. Boswell received reports that a blue Tahoe had been involved in a robbery. He noted that the Tahoe "had Scotch tape on the outside of the windshield over the registration certificate where the license number is and VIN number." Boswell knew Scotch tape is used to blur numbers so they cannot be captured by surveillance cameras. He asked for consent to search the Tahoe. Lively asked why Boswell wanted to search, and Boswell stated it was due to the way Lively was acting. Lively then responded, "[W]ell, if you feel like looking in there, look in there."

Boswell found a loaded and chambered gun in the Tahoe, along with bandanas, four or five license plates, and hats, including a camouflage hat. He took pictures of the evidentiary items and of Lively, who was wearing blue jeans, sunglasses, dark work-style boots, and a belt with a rectangular metal buckle. He radioed the license plate to dispatch again. This time, the license plate matched the Tahoe and confirmed Boswell's suspicions that Lively switched the license plates while Boswell was speaking with the owners of the other car involved in the accident. Lively was arrested for his expired driver's license.

4

Randell travelled to Gun Barrel City, saw that the evidence from the Wal-Mart stop matched the description of the gun, person, and vehicle involved in the J&J Fastop robbery, and obtained a warrant for Lively's arrest.

## II. The Evidence Was Legally and Factually Sufficient

### A. Standard of Review

We review the legal and factual sufficiency of the evidence supporting a conviction under well-established standards. In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). We may find evidence factually insufficient in two ways: (1) the evidence

5

supporting the conviction is "too weak" to support the fact-finder's verdict, or (2) considering the conflicting evidence, the fact-finder's verdict is against the great weight and preponderance of the evidence. *Laster*, 275 S.W.3d at 518. In so doing, we may only find the evidence insufficient when necessary to prevent manifest injustice. *Id.* Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

In Lively's case, the State had to prove that (1) Lively; (2) committed theft of property; (3) intended to obtain or maintain control over that property; (4) intentionally or knowingly threatened or placed Bryant in fear of imminent bodily injury or death; (5) while exhibiting or using a deadly weapon (here, a firearm). TEX. PENAL CODE ANN. §§ 29.02, 29.03 (Vernon 2003).

### B.    Analysis

Lively's appellate challenge to the sufficiency of the evidence focuses solely on identity and does not challenge the remaining elements.

At trial, all of the facts above were relayed to the jury. Specifically, Bryant testified to the robber's description and told the jury he was driving a dark colored SUV. Bryant identified Lively in court and said she was certain he was the person who robbed her at the J&J Fastop. She identified him "from the nose up and the side of his hair," by the top of his cheekbones, and

6

"[b]ecause as far as his ears goes, one sits higher than the other."

Randell testified the pictures taken by Boswell matched the vehicle and description of the robber at the J&J Fastop. He told the jury that he believed the gun found at Wal-Mart was the same as the gun used in the robbery. The jury viewed the videos of the robbery, admitted without objection, and was able to compare them to the pictures of evidence recovered by Boswell during the Wal-Mart accident.

We conclude this evidence was legally sufficient to allow the jury, who was free to resolve conflicts in the testimony and evidence, to determine whether Lively was the person who robbed the J&J Fastop.

In addressing factual sufficiency, Lively points out that the robber was wearing a bandana covering his face, that Bryant was looking at the gun in the robber's hands, and that Bryant may have said initially that the robber was driving a two-tone brown and white Suburban, and misidentified the color of the gun as black instead of blue steel. Lively also complains that Bryant's in-court identification, which was not objected to at trial, was tainted by her attending another robbery trial in which Lively was the defendant and that Bryant's identification of the getaway vehicle as a dark Tahoe after viewing the surveillance videos was based on circumstantial proof. Examining the contrary evidence in a neutral light, we cannot conclude the proof of Lively's guilt was obviously weak as to undermine confidence in the verdict.

We conclude the evidence was both legally and factually sufficient to support the jury's

7

verdict that Lively was the person who committed aggravated robbery at the J&J Fastop. Lively's sufficiency points of error are overruled.

**III.    The Trial Court Did Not Err in Denying the Motion to Suppress**

Next, Lively's counsel moved to suppress the pictures and evidence found in the Wal-Mart parking lot. He argues that the trial court erred in determining Lively gave his consent to search the Tahoe.

The trial court's decision to deny Lively's motion to suppress will be reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Maysonet v. State*, 91 S.W.3d 365, 369 (Tex. App.—Texarkana 2002, pet. ref'd). This particular review of the motion to suppress only involves the fact question of whether Lively gave consent to search. Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, we afford almost total deference to its determination of facts supported by the record. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold it if that ruling was supported by the record and was correct under any theory of law applicable to the case. *Ross*, 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); *Maysonet*, 91 S.W.3d at 369.

8

Lively's consent to search the vehicle, if otherwise voluntary, was effective to legalize the search of the Tahoe if given within the scope of the accident traffic stop. *See Florida v. Royer*, 460 U.S. 491, 501 (1983). In Texas, the State is required to prove the voluntariness of consent by clear and convincing evidence based on the totality of the circumstances. *See Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000); *Malone v. State*, 163 S.W.3d 785, 800 (Tex. App.—Texarkana 2005, pet. ref'd).

Whether consent was given freely and voluntarily is to be answered by looking at the totality of the circumstances surrounding the consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Fancher v. State*, 659 S.W.2d 836, 839 (Tex. Crim. App. 1983). For consent to be valid, the State must show by clear and convincing evidence that it was not "coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth*, 412 U.S. at 228; *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991) (en banc). In determining whether consent was voluntary, courts consider various factors, including whether the consenting person was in custody, whether he or she was arrested at gunpoint, whether he or she had the option of refusing consent, the constitutional advice given to the accused, the length of detention, the repetitiveness of the questioning, and the use of physical punishment. *See Flores v. State*, 172 S.W.3d 742, 749 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The voluntariness of consent to search does not require proof of the defendant's knowledge of a right to refuse the search. *Schneckloth*, 412 U.S. at 234.

9

During the hearing on the motion to suppress, Lively was merely asked, "Did you give consent for the search of your vehicle," to which he replied, "No, I did not." Lively provided no other testimony or explanation of the situation involving consent. There was no testimony or argument in Lively's brief that he was in custody when Boswell asked for consent, was arrested at gunpoint, was the subject of physical force, suffered a lengthy detention, or was given any advice regarding consent.

The State chose not to cross-examine Lively. Instead, it introduced a stipulation in which both parties agreed Lively had been previously convicted of a crime of moral turpitude. Next, the State called Boswell, who testified that he asked for consent and Lively asked why he needed it. After Boswell explained he wanted to search the Tahoe because of the way Lively was acting, Lively said, "[W]ell, if you feel like looking in there, look in there."[2]

The trial court was the exclusive trier of fact and judge of witness credibility at the suppression hearing. It found Lively consented to the search. As the fact-finder, the court was free to believe Boswell's testimony and disregard Lively's testimony. Because the record supports the trial court's finding of consent, we afford the proper deference to its determination and conclude that it did not abuse its discretion in overruling Lively's motion to suppress the evidence obtained as a result of the accident investigation.

---

[2]Lively attempted to impeach Boswell by introducing a transcript of a prior proceeding in a different county in which Boswell stated he asked Lively for consent twice. Boswell said his comment was taken out of context, that he only asked for Lively's consent once and that Lively never refused consent.

**IV.** **The Trial Court Did Not Err in Admitting Evidence from the Gun Barrel City Arrest**

Lively contends the trial court "erred in admitting 404(b) evidence obtained during Appellant's Gun Barrel City arrest to prove his identity as the suspect"[3] in the J&J Fastop robbery. A trial court's decision to admit or exclude evidence is reviewed only for abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). A trial court does not abuse its discretion as the decision to admit evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If the trial court's decision on the admission of evidence is supported by the record, there is no abuse of discretion, and the trial court will not be reversed. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Montgomery*, 810 S.W.2d at 379.

The general rule is that all evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable is admissible. TEX. R. EVID. 401, 402. However, unless admitted "for other purposes, such as . . . identity," evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). "Rule 404(b) is a rule of inclusion rather than exclusion." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). The

---

[3]Contrary to Lively's assertion that the trial court denied his motion in limine based on Rule 404(b) with respect to the photographic evidence obtained at Wal-Mart, the record demonstrates his motion in limine was granted.

rule only excludes evidence that is offered or will be used solely for the purpose of proving bad character and hence conduct in conformity with that bad character. *Id.* at 343 (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996) ("if evidence (1) is introduced for a purpose other than character conformity, (2) has relevance to a 'fact of consequence' in the case and (3) remains free of any other constitutional or statutory prohibitions, it is admissible")).

The photographs of Lively, his Tahoe, and its contents were relevant. Identity of the J&J Fastop robber was a fact of consequence in the case, and the evidence obtained at Wal-Mart made the determination of whether Lively was the robber more probable, a fact pointed out by the State. Contrary to Lively's contention, because the incident at Wal-Mart was not another robbery, the photographs could not have been shown to the jury "to prove the character of a person in order to show action in conformity therewith." In making its ruling, the trial court understood that the "photographs . . . are not going to the other crime, it's going to go to the things found at the scene of the accident." We conclude the trial court did not journey beyond the zone of reasonable disagreement in concluding Rule 404(b) did not preclude inclusion of the photographs taken during the Wal-Mart accident and arrest.[4]

During the guilt/innocence phase, Boswell testified he heard reports while working the

---

[4]Lively argues that Rule 404(b) should have prevented Boswell from testifying he received reports that a blue Tahoe was used in a robbery near his location. The only objection raised to Boswell's statement, which did not mention that the other robbery involved Lively or his Tahoe, was a hearsay objection. We need not address Lively's unpreserved Rule 404(b) contention.

accident that a blue Tahoe was used in a previous robbery nearby. Counsel's objection to admission of this type of testimony was overruled. On appeal, Lively argues the trial court erred in allowing Boswell's testimony because it constituted an inadmissible extraneous offense. We disagree.

Again, evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action *in conformity therewith*." TEX. R. EVID. 404(b) (emphasis added). To constitute an extraneous offense, the evidence must show a bad act or crime, and that the defendant was connected to it. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993) (quoting *Lockhart v. State*, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992)). Where the State does not tie the defendant to a previous act, it is not being used to show "*that person's* actions in conformity with such character." *Rodriguez v. State*, 975 S.W.2d 667, 684 (Tex. App.—Texarkana 1998, pet. ref'd).

Rodriguez was convicted of aggravated robbery for theft of a wallet accomplished by threat of a handgun. *Id.* at 671. In that case, the arresting officer testified the vehicle Rodriguez was in had been reported stolen, a fact which the officer claimed Rodriguez later admitted. *Id.* at 683. This Court reasoned that because the officer's statements were not specifically connected to Rodriguez, and nothing in the evidence suggested he stole the car or knew the car was stolen before his arrest, the officer's statements could not be interpreted as testimony of any prior bad act by Rodriguez. *Id.* at 684. Thus, we ruled that Rule 404(b) did not apply to bar the officer's

13

testimony. *Id.*

Here, the State did not allege, and Boswell did not testify that it was Lively's blue Tahoe that was used in the previous robbery or that Lively had committed the robbery. As in *Rodriguez*, we conclude Boswell's testimony, which did not refer to any prior bad act by Lively, was not barred by Rule 404(b) because it was not being used to show action in conformity therewith.

These points of error are overruled.

## V. Ineffective Assistance of Counsel

Allegations of ineffectiveness must be firmly founded in the record. *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Absent an opportunity for the attorney to explain the questioned conduct, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392; *Fox v. State*, 175 S.W.3d 475, 486 (Tex. App.—Texarkana 2005, pet. ref'd). For this reason, direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Thompson*, 9 S.W.3d at 813–14; *Fox*, 175 S.W.3d at 485.

We evaluate ineffective assistance of counsel claims using the two-part *Strickland* test formulated by the United States Supreme Court, which requires a showing of both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Thompson*,

14

9 S.W.3d at 812; *Fox*, 175 S.W.3d at 485. First, Lively must show that his counsel's representation fell below an objective standard of reasonableness. *Fox*, 175 S.W.3d at 485 (citing *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong*, 25 S.W.3d at 712. Therefore, we will not second-guess the strategy of Lively's counsel through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd).

The second *Strickland* prong requires a showing that the deficient performance prejudiced the defense to the degree that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 689; *Tong*, 25 S.W.3d at 712. Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006).

Before trial, Bryant was subpoenaed by a court in Tyler, Texas, on another robbery case in which Lively was the defendant. Bryant did not testify in that trial. A motion in limine was granted preventing the State from mentioning or alluding to any pretrial identification. The State told the court it did not anticipate discussing any pretrial identification. During cross-examination of Bryant, the following exchange occurred:

Q. Now, you have never seen that man that took your money on June 26th of 2007, since that time; is that correct?

A. Yes.

Q. But after all this time -- and this is the very first time that you've seen this man sitting right here in this courtroom right?

A. I've seen him one time. That's when I had to go to Tyler.

Q. That was when?

A. When I went to Tyler when he was brought over there.

Q. You went to Tyler, Texas?

A. That's --

Q. Let's talk about that.

Counsel immediately asked to approach the bench and asked for a hearing outside the presence of the jury. On appeal, Lively complains his counsel was ineffective because "he failed to request a hearing outside the presence of the jury prior to opening the door on cross-examination to testimony surrounding an impermissibly suggestive pretrial identification by the victim."

Although Lively argues counsel's questions "invited evidence of an impermissibly suggestive pretrial identification," the trial court confirmed that counsel's questions did not open the door to any pretrial identification. We agree with the trial court on this matter. Bryant's nonresponsive answer to the question of whether she had seen Lively "in this courtroom" made no reference to the Tyler court trial. She merely stated that she saw Lively in Tyler, Texas, and did not suggest that she identified Lively as the robber at that time. In his brief, Lively did not expand on the need for a hearing outside the jury's presence on this issue; counsel had already obtained a favorable ruling on a motion in limine regarding pretrial identification testimony. We find no ineffective assistance of counsel in this matter.

Lively also complains his counsel was ineffective in failing to object to the in-court identification by Bryant, which was tainted by allegedly impermissibly suggestive identification procedures in Tyler. Before trial, counsel stated to the court his "position . . . that a pretrial identification procedure was impermissibly suggestive and tainted the in-court identification procedure." After Bryant's in-court identification, counsel objected and asked "the Court to exclude her in-court identification of Carl Lively here in the court today because it was tainted in an impermissibly suggestive way by the pretrial identification procedures down in Tyler, Texas." Trial counsel objected to the pretrial identification as being tainted, obtained a hearing to develop the issue, and obtained an adverse ruling by the trial court. The fact that the hearing and ruling by the court occurred after the in-court identification by the witness did not preclude the trial judge

17

from excluding and striking the testimony had he agreed that the identification was improper. Contrary to Lively's assertion, we find that counsel sufficiently objected to the in-court identification.

Nevertheless, counsel would not be considered ineffective in this case had he failed to object to the in-court identification. An in-court identification is examined based on the totality of the circumstances to determine if a "suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Wallace*, 75 S.W.3d at 584.

Bryant's in-court identification was admissible if it was based on her observations at the time of the offense and was not affected by the pretrial procedures. *Neil v. Biggers*, 409 U.S. 188, 198–99 (1972). We look to the opportunity of the witness to view the accused at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the accused, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation. *Wallace*, 75 S.W.3d at 585 (citing *Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998)).

Bryant said that her presence in the Tyler courtroom did not have any effect on her in-court identification of Lively. The surveillance cameras demonstrated that Bryant was close to Lively at the time of the robbery. Although his face was covered by a bandana and sunglasses, Bryant identified Lively based on characteristics such as his hair color, eyebrows, top of his cheekbones, dissimilar ears, approximate age, and height. As to the degree of attention, Bryant stated, "When

18

somebody's [sic] robs you at gunpoint and you can see what you could see when they rob you, that's something that does not go away."  Bryant's statements given to Randell, which formed the basis of the police broadcast, and her written statement to the police also demonstrated her degree of attention and accuracy relating to Lively's physical description.  Although the length of time between the robbery and trial does not favor admission of the in-court identification, Bryant reiterated her certainty throughout trial that Lively was the person who robbed her.  She claimed "if I wouldn't have been in Tyler when he was there, I still would have recognized him from the sideburns and the ears.  Some facial descriptions, you don't—they—they don't go away."  Based on the totality of the circumstances, Bryant demonstrated her in-court identification was independently reliable.

We overrule this last point of error.

## VI.     Conclusion

We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:     April 29, 2010
Date Decided:      May 5, 2010

Do Not Publish

19