FILED IN
COURT OF CRIMINAL APPEALS

August 4, 2015

ABEL ACOSTA, CLERK

PD-0823-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/3/2015 2:47:36 PM
Accepted 8/4/2015 9:23:12 AM
ABEL ACOSTA
CLERK

PD-0823-15
PD-0824-15

### IN THE TEXAS COURT OF CRIMINAL APPEALS

---

# RICHARD DOUGLAS BAILEY

*APPELLANT*

vs.

# THE STATE OF TEXAS

*APPELLEE*

---

FROM THE FIFTH COURT OF APPEALS
CAUSE NOS. 05-14-00885-CR & 05-14-00886-CR

APPEAL FROM CRIMINAL DISTRICT COURT NO. 1
OF DALLAS COUNTY, TEXAS,
CAUSE NOS. F-12-34478-H & F-12-34479-H

---

# APPELLANT'S PETITION
# FOR DISCRETIONARY REVIEW

---

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

*Counsel for Appellant*

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

## Ground for Review

Whether Article 37.07 § 3(i) of the Code of Criminal Procedure is unambiguous and does not lead to absurd results and thus must be interpreted literally.

# Table of Contents

Ground for Review ...................................................................................2

Index of Authorities ...............................................................................4

Identity of Parties and Counsel ............................................................6

Statement Regarding Oral Argument ....................................................7

Statement of the Case and Procedural History.......................................8

Argument...................................................................................................10

    I.    The trial court ignored the plain language of the statute........10

    II.   The court of appeals justified the trial court's action by pointing to the statute's legislative history .....................................11

    III.    The court of appeals was wrong to point to the legislative history of the statute to interpret it; it's unambiguous and does not lead to absurd results ...................................................................14

    IV.   Conclusion .................................................................................19

Prayer .......................................................................................................19

Certificate of Service................................................................................21

Certificate of Compliance .......................................................................21

Appendix....................................................................................................22

# Index of Authorities

## Cases

*Bailey v. State*, No. 05-14-00885-CR, 2015 WL 3488886 (Tex. App.—
  Dallas 2015) .................................................................................9, 12

*Barker v. State*, No. 05-03-01495-CR, 2004 WL 2404540, \*3 (Tex. App.—
  Dallas Oct. 28, 2004, no pet.) ...........................................................13

*Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)....14, 15, 17

*Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012).....................16

*Cunningham v. State*, No. 06-05-00215-CR, 2006 WL 2671626, \*6 (Tex.
  App.—Texarkana Sept. 19, 2006, pet. ref'd) .......................................13

*Ex parte Ruthart*, 980 S.W.2d 469, 472 (Tex. Crim. App. 1998).............15

*Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011) ..........14, 15

*Hooks v. State*, 73 S.W.3d 398, 402 (Tex. App.—Eastland 2002, no pet.)
  ................................................................................................13, 14

*King v. Burwell*, 135 S. Ct. 2480, 2504-05 (2015).............................18, 19

*Kloeckner v. Solis*, 568 U.S. ——, ——, n. 4, 133 S.Ct. 596, 607, n. 4
  (2012) ..............................................................................................16

*Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) .......................17, 18

*Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 586 (Tex.
  Crim. App. 1993) ..............................................................................15

*Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008)..................15

*Lynch v. Alworth–Stephens Co.*, 267 U.S. 364, 370 (1925) .....................16

*Murphy v. State*, No. 03-02-00171-CR, 2002 WL 31385821, at \*5 (Tex.
  App.—Austin 2002, pet. ref'd)............................................................11

*Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 471 (1989).....................17

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) .........19

*Rodriguez v. State*, 975 S.W.2d 667, 687 (Tex. App.—Texarkana 1998,
  pet. ref'd) .........................................................................................13

*Sturges v. Crowninshield*, 4 Wheat. 122, 203, 4 L.Ed. 529 (1819) .........18

*Whitehead v. State*, 273 S.W.3d 285, 288 (Tex. Crim. App. 2008)..........15

## Statutes

TEX. CODE CRIM. PROC. art. 37.07 § 3(a)(1) .............................................10

TEX. CODE CRIM. PROC. art. 37.07 § 3(i) ..................................................17

TEX. PEN. CODE § 46.04 ..................................................................8
TEX. PEN. CODE § 31.03 ..................................................................8
TEX. PEN. CODE § 38.04 ................................................................11
TEX. PEN. CODE § 46.02 ................................................................11
TEX. TRANSP. CODE § 545.421 ......................................................11

## Rules

TEX. R. APP. P. 21.8(c) ...................................................................9

## Constitutional Provisions

TEX. CONST. art. III, § 1. Art. I, § 1 ............................................19
TEX. CONST. art. V, § 1 ................................................................19

## Identity of Parties and Counsel

For Appellant Richard Douglas Bailey:

    PETE SCHULTE
        *Trial counsel of record*
    4131 N. Central Expressway, Suite 680
    Dallas, Texas 75204

    BRETT ORDIWAY
        *Appellate counsel of record*
    SORRELS, UDASHEN & ANTON
    2311 Cedar Springs Suite 250
    Dallas, Texas 75201

For Appellee the State of Texas:

    RACHEL BURRIS
        *Trial counsel of record*
    DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
    133 N. Riverfront Blvd.
    Dallas, Texas 75207

    MARISA ELMORE
        *Appellate counsel of record*
    DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

Trial court:

    CRIMINAL DISTRICT COURT NO. 1 OF DALLAS COUNTY
    THE HONORABLE ROBERT BURNS PRESIDING

## Statement Regarding Oral Argument

Bailey believes it is clear from the court of appeals's opinion and the briefing that the court of appeals improperly looked to legislative history in interpreting Article 37.07 § 3(i) of the Code of Criminal Procedure. Accordingly, oral argument is waived.

## Statement of the Case and Procedural History

A Dallas County grand jury indicted Bailey on August 16, 2012, for theft of a firearm and, thereby, unlawful possession of a firearm by a felon in a weapon-free zone. *See* TEX. PEN. CODE § 31.03(e)(4)(C) & TEX. PEN. CODE § 46.04; (CR1[1]: 12; CR2[2]: 10). As to the latter offense, the indictment alleged that (1) Bailey was a felon because he had been convicted of burglary in 1992, and that (2) his punishment should be enhanced because the offense occurred within 300 feet of an elementary school. (CR2: 10).

Bailey pleaded not guilty but waived his right to a jury trial. (CR1: 59; RR2: 6-8). His trial before the court was held on April 11, 2014,[3] at which the State presented four witnesses. (RR2). The defense called two witnesses: Bailey and his girlfriend. (RR2: 80, 88). On April 15, 2014, the court announced that it found Bailey guilty of both charges. (RR3: 4). At the conclusion of Bailey's sentencing hearing on June 17, 2014, the court

---

[1] The clerk's record for cause F12-34478-H will be referred to as "CR1."

[2] The clerk's record for cause F12-34479-H will be referred to as "CR2."

[3] The reporter's record for this volume states the date as *July* 11, 2014. (RR2). The entirety of the record, though—the dates of the other volumes, and the docket sheets—make clear Bailey's trial began on April 11.

then sentenced him to one and four years' imprisonment in the theft and possession cases, respectively. (RR4: 28-29); (CR1: 36; CR2: , 32).

Bailey filed notice of appeal and a motion for new trial on June 26, 2014, the latter of which was overruled by operation of law. (CR1: 45, 47; CR2: 35, 37); *see* TEX. R. APP. P. 21.8(c). The Fifth Court of Appeals overruled his grounds on appeal and affirmed his conviction in an opinion released June 2, 2015. *Bailey v. State*, No. 05-14-00885-CR, 2015 WL 3488886 (Tex. App.—Dallas 2015). No motion for rehearing was filed.

## Argument

Article 37.07 § 3(i) of the Code of Criminal Procedure is unambiguous and does not lead to absurd results and thus must be interpreted literally.

❖ ❖ ❖

### I. The trial court ignored the plain language of the statute

At the punishment phase of Bailey's trial, the State introduced evidence of Bailey's 14 prior convictions. And, indeed, section (a)(1) of article 37.07 of the Code of Criminal Procedure states that:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and ... any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. art. 37.07 § 3(a)(1). Section 3(i) of the same article states, however, that:

> Evidence of an adjudication for conduct that is a violation of a penal law of the grade of misdemeanor punishable by confinement in jail is admissible *only if the conduct upon which the adjudication is based occurred on or after January 1, 1996.*

10

*Id.* at § 3(i) (emphasis added). Accordingly, Bailey's counsel objected to the admission of evidence of misdemeanor convictions from "the mid-90s, low, early mid-90s." (RR4: 5); *cf. Murphy v. State*, No. 03-02-00171-CR, 2002 WL 31385821, *5 (Tex. App.—Austin 2002, pet. ref'd) (finding identical complaint not preserved for review where appellant failed to object to the admission of his prior misdemeanors at the time they were introduced into evidence). The trial court nonetheless overruled counsel's objections and admitted evidence of three misdemeanor convictions stemming from conduct which occurred prior to January 1, 1996:

1) unlawfully carrying a weapon on April 10, 1992; (SX11 & SX15); *see* TEX. PEN. CODE § 46.02;

2) evading arrest on August 29, 1991; (SX14 & SX19); *see* TEX. PEN. CODE § 38.04; and

3) fleeing from police on January 4, 1995 (SX16 & 20); *see* TEX. TRANSP. CODE § 545.421.

(RR4: 5).

## II. The court of appeals justified the trial court's action by pointing to the statute's legislative history

On appeal to the Fifth Court of Appeals, Bailey argued that the trial court abused its discretion in admitting evidence of his misdemeanor convictions that occurred prior to January 1, 1996. (Ap. Br. at 26-27). The

11

Code of Criminal Procedure clearly states that such evidence is admissible "only if the conduct upon which the adjudication is based occurred *on or after* January 1, 1996." And because, in this case, there can be no question that the court's error was harmful—the court stated as much on the record[4]—Bailey's sentence must therefore be vacated and the cases must be remanded to the trial court for a new sentencing hearing. (Ap. Br. at 29-30).

The court of appeals did not get to the harm question. It overruled Bailey's ground on the basis that the trial court did *not* abuse its discretion—despite the clear statutory language to the contrary—by pointing to four opinions from it and its sister courts, which each held that article 37.07 § 3(i) applies only to juvenile adjudications of delinquency, not adult convictions. *See Bailey v. State*, No. 05-14-00885-CR, 2015 WL 3488886, *6 (Tex. App.—Dallas 2015) (citing *Hooks v. State*, 73 S.W.3d

---

[4] Before sentencing Bailey, the judge specifically stated:

> Mr. Bailey, I've got to tell you, I'm really pretty much shocked by the extent of your criminal history and all of the theft convictions. It makes it very difficult for me to believe anything you say.

(RR4: 19). The court then rejected Bailey's imploration for a probated sentence, predicated on his promise to commit no further offenses, and sentenced him to one and four years' imprisonment. (RR4: 26-27, 29).

398, 402 (Tex. App.—Eastland 2002, no pet.); *Rodriguez v. State*, 975 S.W.2d 667, 687 (Tex. App.—Texarkana 1998, pet. ref'd); *Barker v. State*, No. 05-03-01495-CR, 2004 WL 2404540, *3 (Tex. App.—Dallas Oct. 28, 2004, no pet.) (mem. op., not designated for publication); *Cunningham v. State*, No. 06-05-00215-CR, 2006 WL 2671626, *6 (Tex. App.—Texarkana Sept. 19, 2006, pet. ref'd)).

The rationale behind each of those cases is set out in *Hooks*. In that case, the Eastland Court of Appeals relied entirely on the statute's legislative history to supports its conclusion that article 37.07 § 3(i) applies only to juvenile adjudications of delinquency, not adult convictions:

> The Act of June 2, 1997, 75th Leg., R.S., ch. 1086, § 31, 1997 Tex. Gen. Laws 4179, 4191 reflects that Section 3(i) was originally enacted as Section 3(h) and that, at the same time, the legislature amended the last sentence in Section 3(a) to read:
>
> > Additionally, notwithstanding Rule 609(d), Texas Rules of Criminal Evidence, *and subject to Subsection (h)*, evidence may be offered by the state and the defendant of an adjudication of delinquency based on a violation by the defendant of a penal law of the grade of:
> >
> > (1) a felony; or
> >
> > (2) a misdemeanor punishable by confinement in jail. (Emphasis added to note the language added by the legislature)

13

During the same session, the legislature had earlier enacted another Section 3(h) that prevented the State or defendant from offering evidence during the punishment phase that the defendant planned to undergo an orchiectomy (castration). Act of May 5, 1997, 75th Leg., R.S., ch. 144, § 2, 1997 Tex. Gen. Laws 287, 289. Attempting to correct the problem of having enacted two sections numbered 3(h), the legislature in 1999 renumbered the Section 3(h) enacted on June 2, 1997, as Section 3(i); however, the legislature failed to change the reference in Section 3(a) from (h) to (i). See the notes on the legislative history of TEX. CODE CRIM. PROC. art. 37.07 in the 2002 Vernon supplement. Despite this oversight by the legislature, the reference in Section 3(a) to (h) should be read to refer to what is now codified as Section 3(i) because a reference to any portion of a statute or rule applies to all reenactments, revisions, or amendments of the statute or rule. TEX. GOV'T CODE ANN. § 311.027 (Vernon 1998).

*Hooks*, 73 S.W.3d at 402.

### III. The court of appeals was wrong to point to the legislative history of the statute to interpret it; it's unambiguous and does not lead to absurd results

Statutory construction is a question of law, and appellate courts are to review lower courts' interpretation of a statute de novo. *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). When appellate courts interpret statutes, their constitutional duty is to determine and give effect to the apparent intent of the legislators who voted for it. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). Indeed, "the Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow

14

the specific text that was adopted." *Id*. In determining this apparent legislative intent, courts must focus their attention on the text of the statute and ask, how would ordinary legislators have understood that text? *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 586 (Tex. Crim. App. 1993). Appellate courts must look first to the statute's literal text, and "'read words and phrases in context and construe them according to the rules of grammar and usage.'" *Harris*, 359 S.W.3d at 629 (quoting *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008)). Words and phrases are construed under the rules of grammar and common usage unless they have acquired technical or particular meaning. *Ex parte Ruthart*, 980 S.W.2d 469, 472 (Tex. Crim. App. 1998). "Only if the statutory language is ambiguous, or leads to absurd results that the Legislature could not have possibly intended, may [courts] consult extra-textual sources." *Harris*, 359 S.W.3d at 629 (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)); *see also Whitehead v. State*, 273 S.W.3d 285, 288 (Tex. Crim. App. 2008) ("Given this ambiguity in the statute, we may legitimately consider, in arriving at a sensible interpretation, such extratextual factors as legislative history or the probable consequences of a particular interpretation.").

Under the same framework, the United States Supreme Court has stated that "the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." *Lynch v. Alworth–Stephens Co.*, 267 U.S. 364, 370 (1925) (internal quotation marks omitted). "[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity [of] the statute's text." *Kloeckner v. Solis*, 568 U.S. –––, –––, n. 4, 133 S.Ct. 596, 607, n. 4 (2012).

Ambiguity exists when reasonably well-informed persons may understand the statutory language in two or more different senses; conversely, a statute is unambiguous when it permits only one reasonable understanding. *See Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012). In this case, there is nothing ambiguous about Article 37.07 § 3(i). The words are common (at least for lawyers); the grammar is sound:

> Evidence of an adjudication for conduct that is a violation of a penal law of the grade of misdemeanor punishable by confinement in jail is admissible *only if the conduct upon which the adjudication is based occurred on or after January 1, 1996.*

16

TEX. CODE CRIM. PROC. art. 37.07 § 3(i). Thus, the only question is whether that text creates such an unthinkable result as to trigger the absurdity doctrine. *See Boykin*, 818 S.W2d at 785; *see also Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."). Indeed, absurdity is the only basis for the extraordinary step of departing from plain text. *See Boykin*, 818 S.W.2d at 785-86 ("If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then and only then, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such extratextual factors as executive or administrative interpretations of the statute or legislative history."). And the test is a rigorous, objective one: The absurdity must be "so clear as to be obvious to most anyone," such that it is "quite impossible that [the legislature] could have intended the result." *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 471 (1989) (Kennedy, J., concurring in judgment) (emphasis added).

To that end, the United States Supreme Court has held that courts have no free-floating power "to rescue Congress from its drafting errors." *Lamie*, 540 U.S. at 542 (internal quotation marks omitted). "Only when it is patently obvious to a reasonable reader that a drafting mistake has occurred may a court correct the mistake." *King v. Burwell*, 135 S. Ct. 2480, 2504-05 (2015) (Scalia, J., dissenting). The occurrence of a misprint may be apparent from the face of the law, or because a provision decrees an absurd result—"a consequence 'so monstrous, that all mankind would, without hesitation, unite in rejecting the application.'" *Id.* (quoting *Sturges v. Crowninshield*, 4 Wheat. 122, 203, 4 L.Ed. 529 (1819) (Marshall, C.J.)). But § 3(i) does not come remotely close to satisfying that demanding standard. It is entirely plausible that the legislature would wish to preclude prosecutors from using minor 15-plus-year-old crimes to deprive the liberty of defendants. The courts of appeals therefore have no authority to dismiss the terms of the law as a drafting fumble.

That is the end of the matter. Because the plain language is unambiguous and does not produce an objectively absurd result, it must be followed, regardless of what the legislature (purportedly) subjectively intended. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618

18

(1992) (question is "not what Congress 'would have wanted' but what Congress enacted"); *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254 (1992) (Congress "says in a statute what it means and means in a statute what it says there").

## IV. Conclusion

The Dallas Court of Appeals's decision, and those of its sister courts, "reflects the philosophy that judges should endure whatever interpretive distortions it takes in order to correct a supposed flaw in the statutory machinery." *King*, 135 S.Ct. at 2505 (Scalia, J., dissenting). That philosophy ignores the Texas people's decision to give "[t]he Legislative power of this State [to] a Senate and House of Representatives." TEX. CONST. art. III, § 1. Art. I, § 1. They made Congress, not the courts, responsible for both making laws and mending them. Courts holds only the judicial power—the power to pronounce the law as the legislature has enacted it. *See* TEX. CONST. art. V, § 1. The court of appeals in this case was wrong, then, in ignoring the plain language of the statute in order to achieve its desired result.

## Prayer

Accordingly, Bailey respectfully requests this Court to grant this petition so that it may reverse and remand this case to the court of appeals to properly evaluate the trial court's error was harmful.

Respectfully submitted,

/s/ Brett E. Ordiway

BRETT E. ORDIWAY
Bar Card No. 24079086
SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
bordiway@sualaw.com
(214)-468-8100 (office)
(214)-468-8104 (fax)

Attorney for Appellant

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was electronically served to the Dallas County District Attorney's Office and the State Prosecuting Attorney on August 3, 2015.


_____/s/ Brett E. Ordiway_____
BRETT E. ORDIWAY


## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this brief contains 2,241 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century.


_____/s/ Brett E. Ordiway_____
BRETT E. ORDIWAY

21

# **<u>Appendix</u>**

**MODIFY and AFFIRM; and Opinion Filed June 2, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00885-CR
### No. 05-14-00886-CR

**RICHARD DOUGLAS BAILEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause Nos. F-1234478-H & F-1234479-H**

## MEMORANDUM OPINION
Before Justices Fillmore, Myers, and Evans
Opinion by Justice Fillmore

Following a bench trial, the trial court found appellant Richard Douglas Bailey guilty of theft of a firearm in cause number F-1234478-H and guilty of unlawful possession of a firearm by a felon in a weapon-free zone in cause number F-1234479-H. The trial court assessed punishment of one year confinement in cause number F-1234478-H and four years' confinement in cause number F-1234479-H. In two issues, Bailey contends (1) the evidence is legally insufficient to support the convictions and (2) the trial court abused its discretion by admitting evidence of his misdemeanor convictions stemming from acts that occurred prior to January 1, 1996. We modify the trial court's judgments to reflect there were no plea bargains. As modified, we affirm the judgments.

## Background

The evening of July 10, 2012, Bailey was with friends in the parking lot of an elementary school and recreation center following a basketball game. Danielle Rossi, who had been dating Bailey for several months, arrived by car with a friend. Talisha Thomas, who was also dating Bailey, was also present in the parking lot. Thomas was unaware Rossi was dating Bailey. Rossi told Bailey she was sorry she had not returned an earlier text message from him. Thomas asked to see Rossi's phone and confirmed Bailey had been communicating with Rossi. Arguments ensued between Thomas and Bailey and between Rossi and Bailey.

According to Rossi, Bailey called her a tramp and told her that her time was coming, he was going to get her, and he was going to shoot her in the face. Rossi and her friend drove away, and Rossi stopped nearby and phoned the police. Irving Police Department officer David Zimmerman arrived and spoke with Rossi. She described the vehicle Bailey was driving as a tan Chevrolet Tahoe. Rossi testified she had never known Bailey to have a gun, and she did not recall telling the police that she felt Bailey had a gun.

Irving Police Department officer Eric Clemens was dispatched to a domestic disturbance in the parking lot of the elementary school and recreation center. Irving Police Department officer Alex Terry was also dispatched to the location. Clemens testified he arrived at the scene prior to Terry. Clemens located the sports utility vehicle and the male described in the dispatch. Bailey advised Clemens the Tahoe was a girlfriend's vehicle he was using. Bailey's gym bags were outside the Tahoe. Clemens testified he explained to Bailey and another male standing by the Tahoe the nature of the dispatch received and why he was there. Once Terry arrived at the scene, Clemens patted down Bailey and determined Bailey did not have a weapon on his person. Clemens then asked Bailey for permission to search the Tahoe. Bailey granted permission for search of the vehicle. The tailgate of the Tahoe was open, and Bailey began his search of the

rear compartments of the vehicle. In a closed compartment on the left side of the Tahoe, Clemens found a black nylon case containing a .380 caliber semi-automatic pistol. Clemens testified the gun was in working order and he recalled that it was loaded. Clemens placed Bailey in handcuffs and made the pistol "inoperable." Bailey acted shocked that the gun was in the Tahoe and stated he did not know where the gun had come from. Bailey did not tell Clemens the gun belonged to his ex-girlfriend Jaileigh Glover. Bailey was placed under arrest because he had care, custody, and control of the Tahoe in which the gun was found. Clemens contacted Zimmerman to advise that a gun had been found in the vehicle Bailey was driving. Zimmerman then came to the scene and took over the investigation.

Zimmerman testified he had been dispatched to a disturbance call. The reporting party, Rossi, had left the scene and was parked approximately a block from the elementary school and recreation center. After speaking with Rossi, Zimmerman went to the scene and contacted officers Clemens and Terry. Zimmerman took possession of the gun, bullets, and ammunition clip that had been found in the Tahoe. Zimmerman conducted a background check on Bailey and learned Bailey had been convicted of a felony. Zimmerman placed Bailey under arrest for possession of a firearm by a felon. Zimmerman testified the location of Bailey's arrest was an elementary school, which is a weapon-free zone. Zimmerman recalled that Clemens transported Bailey to the jail while Zimmerman remained at the scene.

According to Zimmerman's recollection, Clemens had not completed the search of the Tahoe but Bailey was in handcuffs when Zimmerman arrived at the scene. While Zimmerman was conducting a background check on Bailey, Clemens advised Zimmerman that he had located a gun in the Tahoe. Bailey stated he did not know the gun was in the Tahoe and that the gun belonged to Glover, a woman he had dated. Zimmerman contacted Glover, and he had the impression from her that the gun was hers and that she had dated Glover. Zimmerman

–3–

confirmed with the Grapevine Police Department that the gun had been reported stolen, and Zimmerman then added theft-of-a-firearm as an additional charge against Bailey.

At trial, Glover testified she dated Bailey from October 2011 to March or April 2012. Bailey spent the night with her once or twice after they no longer dated. Glover's father purchased a .380 caliber pistol for her to assure her protection. Glover identified the gun found in the Tahoe as her gun. She testified she had custody and control of the gun up to July 2012. Glover kept the gun in the glove compartment of her car most of the time. When she brought the gun into her apartment, she stored it in a hall closet where towels are kept. Glover testified Bailey knew she had a gun and where she kept the gun in her apartment. In 2011, Bailey had taken Glover's gun without her permission. On that occasion, when Glover asked Bailey if he had the gun, he acknowledged that he did; Glover asked Bailey to return her gun, but he did not return it for approximately two months. Glover testified Bailey returned her gun to her sometime before the end of 2011.

In July 2012, Glover determined her gun was missing. The last time she had seen her gun, it was in the hall closet. Glover called her father, and he told her that if the gun had not been found the next day, she should file a stolen-firearm report with police. On July 9, 2012, Glover contacted Bailey because he was the last person in her apartment who knew where she kept the gun. Bailey said he had not seen her gun and asked why Glover thought he would steal her gun. Glover advised Bailey she was contacting the police to file a stolen-firearm report. According to Glover, Bailey did not encourage her to call the police. Glover filed a stolen-firearm report with the Grapevine Police Department that night. Glover testified she did not know when the gun was stolen, but the theft occurred before July 9, 2012. She recalled telling the Grapevine police that she believed her gun went missing between June 27, 2012 and July 9, 2012, although she could not recall how she arrived at the date of June 27, 2012.

–4–

Glover was asked whether she had attended a baseball game with Bailey, and she testified it was possible she had done so. When asked whether she had been intoxicated before entering the baseball game and left her gun "somewhere" because she could not take it into the game, she testified that "it could have [happened]. I don't remember." However, she later testified specifically that she was certain she never had her gun at a baseball game and she never left her gun in the Tahoe driven by Bailey. Glover testified that when she was with Bailey, they always used her car. Although she said she had been in the Tahoe once or twice, she could not recall the last time she had ridden in that vehicle.

Talisha Thomas testified she had known Bailey for eight years and had been in a romantic relationship with him for almost four years. Thomas was present in the parking lot of the elementary school and recreation center at the time of the incident. Rossi and a friend arrived. According to Thomas, Rossi knew Thomas was Bailey's girlfriend. Rossi told Bailey she was sorry she had not responded to a text message from him earlier that day. Rossi allowed Thomas to see text messages on her phone, and Thomas realized Bailey was dating multiple women simultaneously. Thomas attempted to leave in the car she had driven, but Bailey took the keys. Argument ensued among Thomas, Bailey, and Rossi. Bailey yelled to Rossi that she needed to leave, and Rossi told Bailey she hated him and she was going to call the police. Rossi then left. Thomas did not recall Bailey telling Rossi he was going to shoot her in the face. Thomas did not know Bailey had a gun. The Tahoe Bailey was driving belonged to Thomas.

Bailey testified in the guilt-innocence phase of trial. Bailey admitted he had a prior felony conviction more than twenty years previously, but testified he had not been in trouble since.

Regarding the incident at issue, Bailey indicated that following a basketball game, he and friends were gathered in the parking lot of an elementary school. Thomas had joined Bailey after

she finished work. Although Rossi was not invited to attend the basketball game, she arrived at the elementary school parking lot and told Bailey she was sorry she had not returned his text message from earlier in the day. An argument ensued, and Bailey and Rossi were yelling at each other. Bailey testified he did not threaten to shoot Rossi. Bailey recalled Rossi told him she was going to call the police and was "going to get" him.

Irving police officers arrived at the elementary school parking lot after Rossi left. Bailey testified he was searched, but was not carrying a weapon. Clemens asked if he could search Bailey's vehicle, and Bailey consented to the search. Clemens searched Bailey's vehicle, and thereafter Zimmerman arrived at the scene. Clemens searched Bailey's vehicle a second time and found the gun. Bailey told the police officers that he recognized the gun as Glover's and she had left it in the Tahoe. Bailey gave the officers Glover's phone number, and an officer phoned and spoke with Glover. The officer said Glover verified that the gun was hers, but the officers said they had to keep the gun. Another police officer arrived; several minutes later, Bailey was handcuffed, placed under arrest, and taken to jail. Bailey testified he did not steal the gun from Glover, know the gun was in his vehicle at the time of the incident, or have the intent to possess the gun.

Bailey testified he was dating two women in July 2012. He had ended his relationship with Glover and had last seen her approximately one week before the incident at issue. He described an instance in which he and Glover had eaten dinner and had been drinking before a baseball game. Bailey drove to the baseball game and Glover was a passenger in the vehicle. Bailey did not know it, but Glover had her gun with her in a black pouch. When they arrived at the baseball game, Glover knew she could not take the gun into the stadium; Bailey told Glover he would find a place for the gun in his car. Bailey placed Glover's gun in the back of the Tahoe. Bailey stayed at Glover's apartment that night. Bailey and Glover forgot about the gun

–6–

being in the Tahoe.  Glover did not ask about her gun until she called Bailey and told him she had reported the gun stolen.  Bailey testified he told Glover that she needed to report the gun stolen "if there's a gun floating around in your name or your dad's name."  In their conversation, Bailey said, "You think I stole it?  You know, I would never steal anything from you."

The trial court found Bailey guilty of theft of a firearm in cause number F-1234478-H, *see* TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014), and guilty of unlawful possession of a firearm by a felon in a weapon-free zone in cause number F-1234479-H.  *See id*. §§ 46.04(a), 46.11(a)(1) (West Supp. 2014).  The trial court assessed punishment of one year confinement in cause number F-1234478-H and four years' confinement in cause number F-1234479-H.  Bailey's motions for new trial were overruled by operation of law, and Bailey filed these appeals of the convictions.

### Sufficiency of the Evidence

In his first issue, Bailey asserts the evidence is insufficient to support his convictions of theft of a firearm and possession of a firearm by a felon in a weapon-free zone.  "A person commits [theft] if he unlawfully appropriates property with intent to deprive the owner of property."  TEX. PENAL CODE ANN. § 31.03(a).  Appropriation of property is unlawful if it is without the owner's effective consent.  *Id*. § 31.03(b)(1).  A person who has been convicted of a felony commits the offense of unlawful possession of a firearm if, among other circumstances, he possesses a firearm at a location other than the premises at which he lives.  TEX. PENAL CODE ANN. § 46.04(a).  Punishment prescribed for unlawful possession of a firearm by a felon "is increased to the punishment prescribed for the next highest category of offense if it is shown beyond a reasonable doubt on the trial of the offense that the actor committed the offense in a place that the actor knew was . . . within 300 feet of the premises of a school."  TEX. PENAL CODE ANN. § 46.11(a)(1).

–7–

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). The factfinder is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence.").

We defer to the factfinder's determinations of credibility, and may not substitute our judgment for that of the factfinder. *See Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court may not re-weigh the evidence and substitute its judgment for that of the factfinder). When there is conflicting evidence, we must presume the factfinder resolved the conflict in favor of the verdict, and defer to that resolution. *Jackson*, 443 U.S. at 326; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise*, 364 S.W.3d at 903.

In our sufficiency review, "direct evidence of the elements of the offense is not required." *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). Circumstantial evidence is as

probative as direct evidence, and the factfinder is permitted to make reasonable inferences from the evidence presented at trial and in establishing the defendant's guilt. *Id*. "Circumstantial evidence alone can be sufficient to establish guilt." *Id*. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (quoting *Hooper*, 214 S.W.3d at 13).

We review the evidence in the light most favorable to the verdict to determine if the State proved Bailey unlawfully appropriated Glover's gun with the intent to deprive Glover of the property. *See* TEX. PENAL CODE ANN. § 31.03(a). The trial court heard testimony from Glover that Bailey had taken her gun in 2011 without her knowledge or permission and did not promptly return it when she confronted him. With regard to the 2012 incident at issue here, Glover contacted Bailey when she determined her gun was missing because Glover was the last person who had been in Glover's apartment who knew where she kept her gun. Even when Glover inquired of Bailey the day before the incident at issue whether Bailey had her gun, Bailey responded that he did not and could not recall the gun had purportedly been placed in the Tahoe approximately one week before. Yet at trial, well after the incident at issue, Bailey recounted the story regarding the gun being placed in the Tahoe before attending a baseball game and testified he had a "crystal clear" memory of that event. Although Glover stated it was possible she had attended a baseball game with Bailey, and initially testified that leaving her gun "somewhere" because it could not be taken into the game "could have [happened]. I don't remember," when questioned further she specifically testified she was certain she never had her gun at a baseball game and she never left her gun in the Tahoe that Bailey drove.

We conclude a rational factfinder could have found the essential elements of the offense of theft beyond a reasonable doubt. Viewing the evidence in the light most favorable to the

–9–

verdict, there was sufficient evidence for the factfinder to find Bailey, acting with the intent to deprive Glover of her gun, unlawfully appropriated the property without Glover's effective consent. We conclude the evidence supporting the trial court's finding Bailey guilty of theft of the gun was sufficient.

Bailey also was charged as a felon intentionally and knowingly possessing a gun at a location other than the premises at which he lived and at a place he knew was within 300 feet of a school. At trial, Bailey testified he had been previously convicted of a felony and that the incident at issue occurred in the parking lot of an elementary school. On appeal, Bailey does not contest his prior felony conviction or that the incident occurred in a weapon-free school zone. Rather, Bailey's sole assertion is that the evidence is insufficient to prove he knowingly possessed the gun.

Possession is an essential element of the crime of unlawful possession of a firearm. *See* TEX. PENAL CODE ANN. § 46.04(a) (elements of crime for felon in possession of firearm). "'Possession' means actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2014). A person commits a possession offense only if he voluntarily possesses the prohibited item. *See id.* § 6.01(a) (West 2011). "Possession is a voluntary act, if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* § 6.01(b).

With regard to the element of possession, the State was required to show that Bailey knew of the gun's existence and that he exercised actual care, custody, control, or management over it. *See Grantham v. State*, 116 S.W.3d 136, 143 (Tex. App.—Tyler 2003, pet. ref'd). The evidence used to satisfy these elements may be direct or circumstantial, but the accused's connection with the firearm must be more than merely fortuitous. *Davis v. State*, 93 S.W.3d 664, 667 (Tex. App.—Texarkana 2002, pet. ref'd). No set formula of facts exists to dictate a finding

–10–

of affirmative links sufficient to support an inference of knowing possession of contraband. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).

The evidence is that the gun was located in a closed compartment in the rear section of the Tahoe. The Tahoe was in Bailey's possession, and although the vehicle belonged to Thomas, there was no evidence Thomas had any involvement in procuring or possessing Glover's gun. As discussed above, we have concluded the evidence is sufficient for a factfinder to reasonably find Bailey took possession of Glover's gun without Glover's permission and maintained possession of the gun despite Glover confronting Bailey regarding the missing gun. Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence to establish Bailey knew the gun was in the Tahoe as a result of having taken it from Glover and that Bailey exercised custody and control over the firearm.

As addressed above, we have concluded on this record that the trial court, as the factfinder, could have found the elements of the offenses of theft and unlawful possession of a firearm by a felon in a weapon-free zone beyond a reasonable doubt. Accordingly, we resolve Bailey's first issue against him.

**Admission of Evidence**

In his second issue, Bailey asserts that, during the punishment phase of trial, the trial court abused its discretion by admitting evidence of Bailey's misdemeanor convictions that occurred prior to January 1, 1996. According to Bailey, the misdemeanor convictions are only admissible under section 3(i) of article 37.03 of the code of criminal procedure "if the conduct upon which the adjudication is based occurred on or after January 1, 1996." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(i) (West Supp. 2014). The State responds that Bailey's reliance on article 37.07(3)(i) is misplaced because it applies only to juvenile adjudications, and the misdemeanor convictions about which Bailey complains were adult convictions.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or principles. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App.—1993). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Martinez*, 327 S.W.3d at 736.

Bailey acknowledges that under the code of criminal procedure, evidence may be offered relevant to sentencing, including the defendant's prior criminal record. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). However, Bailey states that, of the evidence of Bailey's fourteen prior convictions admitted in evidence, admission of three misdemeanor convictions based on conduct that occurred before January 1, 1996 (evading arrest that occurred on August 29, 1991, unlawfully carrying a weapon that occurred on April 10, 1992, and fleeing from police that occurred on January 1, 1995) was error under article 37.07(3)(i) of the code of criminal procedure. Section 3(i) of article 37.07 provides:

> Evidence of an adjudication for conduct that is a violation of a penal law of the grade of misdemeanor punishable by confinement in jail is admissible only if the conduct upon which the adjudication is based occurred on or after January 1, 1996.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(i). This provision, however, applies to juvenile adjudications of delinquency; it does not apply to adult convictions. *Hooks v. State*, 73 S.W.3d 398, 402 (Tex. App.—Eastland 2002, no pet.); *see also Rodriguez v. State*, 975 S.W.2d 667, 687 (Tex. App.—Texarkana 1998, pet. ref'd).[1]

---

[1] *See Barker v. State*, No. 05-03-01495-CR, 2004 WL 2404540, at *3 (Tex. App.—Dallas Oct. 28, 2004, no pet.) (mem. op., not designated for publication) (section 3(i) of article 37.07 of the code of criminal procedure "applies to juvenile adjudications; it does not apply to adult convictions"); *Cunningham v. State*, No. 06-05-00215-CR, 2006 WL 2671626, at *6 (Tex. App.—Texarkana Sept. 19, 2006, pet. ref'd) (mem. op., not designated for publication) (under section 3(i) or article 37.07 of the code of criminal procedure, juvenile adjudication of delinquency which occurred before January 1, 1996 is not admissible as prior adjudication of delinquency unless the adjudication was for felony-grade offense).

The evidence of misdemeanor convictions Bailey complains about on appeal related to adult convictions, not juvenile adjudications.[2] Evidence of adult convictions for conduct that occurred before January 1, 1996 is not precluded by section 3(i) of article 37.07 of the code of criminal procedure.

We conclude the trial court did not abuse its discretion in admitting the complained-of misdemeanor convictions in evidence. We resolve Bailey's second issue against him.

**Reformation of Judgments**

We may modify a trial court's written judgment to correct a clerical error when we have the necessary information before us to do so. TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). The reporter's record and clerk's records reflect Bailey entered pleas of not guilty to the charges in trial court cause numbers F-1234478-H and F-1234479-H. Further, the clerk's records in cause numbers F-1234478-H and F-1234479-H contain the trial court's certifications that the cases are not plea-bargain cases. The judgments in cause numbers F-1234478-H and F-1234479-H erroneously reflect that they were plea bargain cases. Accordingly, we reform the trial court's judgment in cause number F-1234478-H to delete the language "1 Year State Jail, No Fine" that appears in the section of the judgment titled "Terms of Plea Bargain," and we reform the trial court's judgment in cause number F-1234479-H to delete the language "4 Years TDCJ, No Fine" that appears in the section of the judgment titled "Terms of Plea Bargain."

---

[2] The record reflects Bailey's birthdate. With regard to the dates of the conduct at issue in the complained-of misdemeanor criminal convictions admitted in evidence, Bailey was twenty years of age in August 1991, twenty-one years of age in April 1992, and twenty-four years of age in January 1996. *See Moon v. State*, 451 S.W.3d 28, 37 (Tex. Crim. App.—2014) (designated juvenile court of each county has exclusive jurisdiction over proceedings in cases involving delinquent conduct engaged in by a person who was a "child" at the time the person engaged in the conduct; "child" defined by Juvenile Justice Code as person ten years of age or older and under seventeen years of age) (citations omitted).

As modified, the judgments are affirmed.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

140885F.U05

–14–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

RICHARD DOUGLAS BAILEY, Appellant

No. 05-14-00885-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas,
Trial Court Cause No. F-1234478-H.
Opinion delivered by Justice Fillmore, Justices Myers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The section of the judgment titled "Terms of Plea Bargain" is modified to delete "1 Year State Jail, No Fine."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 2nd day of June, 2015.

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICHARD DOUGLAS BAILEY, Appellant

No. 05-14-00886-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas,
Trial Court Cause No. F-1234479-H.
Opinion delivered by Justice Fillmore,
Justices Myers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

> The section of the judgment titled "Terms of Plea Bargain" is modified to delete "4 Years TDCJ, No Fine."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 2nd day of June, 2015.